# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

LARRY MAYS,                )
                                  )
          Plaintiff,        )
                                  )    No.  3:09-CV-6
v.                            )    (Varlan/Guyton)
                                  )
TENNESSEE VALLEY AUTHORITY,  )
                                  )
          Defendant.    )
                                  )

## TENNESSEE VALLEY AUTHORITY'S OPPOSITION TO PLAINTIFF LARRY MAYS' MOTION FOR CLASS CERTIFICATION

Edwin W. Small (TN BPR 012347)
Assistant General Counsel
Peter K. Shea (TN BPR 005573)
Brent R. Marquand (TN BPR 004717)
James S. Chase (TN BPR 020578)
David D. Ayliffe (TN BPR 024297)
Elizabeth A. Ward (TN BPR 026648)
TVA GENERAL COUNSEL'S OFFICE
400 West Summit Hill Drive
Knoxville, TN 37902-1401
Telephone: 865-632-3021

Mark D. Anstoetter  (MO Bar # 47638)
John K. Sherk, (MO Bar # 35963)
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: 816-474-6550
Attorneys for Defendant TVA

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     PLAINTIFF MAYS ............................................................................................2

III.    ARGUMENT.......................................................................................................5

        A.      Class Action Certification Standards ......................................................5

        B.      Plaintiff's Class Definition Is Fundamentally Flawed.............................7

        C.      Plaintiff Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement. .................11

                1.      Physical contamination of property has not been, and cannot
                        be, shown on a class-wide basis................................................11

                2.      Plaintiff's proffered factual bases for nuisance are not legally
                        viable and, in any event, would unquestionably require
                        individual proof.........................................................................13

                3.      Proof of causation necessarily will be specific to individual
                        class members. ..........................................................................16

                4.      Damages for a private nuisance can only be determined by
                        property-specific evaluations. ...................................................19

        D.      Plaintiff Cannot Satisfy Rule 23(b)(3)'s Superiority Requirement. .....................20

                1.      The Court's docket argues against a finding of superiority.......................20

                2.      Superiority is lacking because centralization already exists.....................23

                3.      Plaintiff's class proposal is inefficient and unmanageable. ......................24

IV.     CONCLUSION.................................................................................................25

i

# TABLE OF AUTHORITIES

## CASES

*Adair v. Johnston*,
221 F.R.D. 573 (M.D. Ala. 2004) ............................................................................................ 10

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................................. 11

*Armstrong v. Whirlpool Corp.*,
No. 3:03-1250, 2007 WL 676694 (M.D. Tenn. Mar. 1, 2007) ................................................ 24

*Bain v. Wells*,
936 S.W.2d 618 (Tenn. 1997) ................................................................................................. 18

*Benefield v. Int'l Paper Co.*, No. 2:09cv232-WHA,
__ F. Supp. 2d __, 2010 WL 4180757 (M.D. Ala. Oct. 20, 2010) ...................................... 7, 10

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005) ................................................................................................... 11

*Brockman v. Barton Brands, Ltd.*,
No. 3:06CV-332-H, 2007 WL 4162920 (W.D. Ky. Nov. 21, 2007) ........................................ 13

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ............................................................................................... 22, 25

*Castleman v. TVA*,
No. 4:06-cv-17, 2006 WL 2136414 (E.D. Tenn. July 28, 2006) .............................................. 14

*Chambers v. Colonial Pipeline Co.*,
296 F. Supp. 555 (E.D. Tenn. 1968) ........................................................................................ 22

*Cheatham v. Shearon*,
31 Tenn. (1 Swan) 213 (1851) ................................................................................................. 18

*Cochran v. Oxy Vinyls LP*,
Civ. A. No. 3:06CV-364-H, 2008 WL 4146383 (W.D. Ky. Aug. 28, 2008) ................... 7, 9, 22

*Cook v. Rockwell Int'l Corp.*,
151 F.R.D. 378 (D. Colo. 1993) .............................................................................................. 24

*Cook v. Rockwell Int'l Corp.*,
618 F.3d 1127 (10th Cir. Sept. 3, 2010) ................................................................... 7, 11, 18, 24

*Corley v. Entergy Corp.*,
220 F.R.D. 478 (E.D. Tex. 2004) ............................................................................................. 20

*Cox v. Am. Synthetic Rubber Co.*,
No. 3:06-CV-422-H, slip op. (W.D. Ky. Dec. 12, 2008) .................................................... 7, 13

*Daigle v. Shell Oil Co.*,
133 F.R.D. 600 (D. Colo. 1990) ................................................................................................ 9

*Duffin v. Exelon Corp.*,
No. CIV-A-06-C-1382, 2007 WL 845336 (N.D. Ill. Mar. 19, 2007) .............................. 7, 9, 15

ii

*Fisher v. CIBA Specialty Chem. Corp.*,
    238 F.R.D. 273 (S.D. Ala. 2006) ...............................................................7, 13, 15

*Fowler v. Ohio Edison Co.*,
    No. 07-JE-21, 2008 WL 5233476 (Ohio Ct. App. 2008) .......................................13

*Freeman v. Blue Ridge Paper Prods., Inc.*,
    229 S.W.3d 694 (Tenn. Ct. App. 2007) ..............................................................15, 16

*Gariety v. Grant Thornton LLP*,
    368 F.3d 356 (4th Cir. 2004) ...............................................................................7

*Gates v. Rohm & Haas Co.*,
    265 F.R.D. 208 (E.D. Pa. 2010) .................................................................7, 13, 19

*General Tel. Co. v. Falcon*,
    457 U.S. 147 (1982) ...............................................................................................6

*Hager v. Waste Tech. Indus.*,
    No. 2000-co-45, 2002 WL 1483913 (Ohio Ct. App. June 27, 2002) ........................13

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) .......................................................................5, 6, 11, 24

*In re Hydrogen Peroxide Anti. Litig.*,
    552 F.3d 305 (3d Cir. 2009) ...............................................................................6, 24

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ....................................................................................6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ..........................................................................23

*In re New Motor Vehicles Can. Exp. Anti. Litig.*,
    522 F.3d 6 (1st Cir. 2008) ...............................................................................6, 11

*Isabel v. Velsicol Chem. Corp.*,
    No. 04-2297 DV, 2006 WL 1745053 (W.D. Tenn. June 20, 2006) ..........................22

*Kemp v. Medtronic, Inc.*,
    No. 1:97-cv-00103-SSB, 1998 WL 35161989 (S.D. Ohio Feb. 11, 1998)..................21, 23

*LaBauve v. Olin Corp.*,
    231 F.RD. 632 (S.D. Ala. 2005) ..........................................................................7, 20

*Lewallen v. Medtronic USA, Inc.*,
    No. C 01-20395 RMW, 2002 WL 31300899 (N.D. Cal. Aug. 28, 2002)..................21

*Mays v. Tennessee Valley Auth.*,
    699 F. Supp. 2d 991 (E.D. Tenn. 2010) ...............................................................24

*McGuire v. Int'l Paper Co.*,
    No. 1:92-CV-593BRR, 1994 WL 261360 (S.D. Miss. Feb. 18, 1994)......................21

*Newton v. Merrill Lynch, Pierce, Fenner & Smith*,
    259 F.3d 154 (3d Cir. 2001) ...............................................................................15

iii

*O'Neal v. Wackenhut Servs., Inc.*,
No. 3:03-CV-397, 2006 WL 1469348 (E.D. Tenn. May 25, 2006)..........................................23

*Olden v. LaFarge Corp.*,
383 F.3d 495 (6th Cir. 2004) ...................................................................................................12

*Pate v. City of Martin*,
614 S.W.2d 46 (Tenn. 1981)..............................................................................12, 14, 16, 19

*Rhodes v. E.I. Pont de Nemours & Co.*,
253 F.R.D. 365 (S.D. W. Va. 2008) ..........................................................................................7

*Rios v. Sec'y of Labor*,
100 F.R.D. 395 (S.D.N.Y. 1983) ..............................................................................................8

*Robertson v. Monsanto Co.*,
287 Fed. App'x. 354 (5th Cir. 2008) .......................................................................................21

*Rodney v. NW. Airlines, Inc.*,
146 Fed. App'x. 783 (6th Cir. 2005) ...................................................................................6, 24

*Romberio v. UnumProvident Corp.*,
No. 07-6404, 2009 WL 87510 (6th Cir. Jan. 12, 2009)...................................................5, 8, 10

*Sadler v. Tennessee*,
56 S.W.3d 508 (Tenn. Ct. App. 2001) ...............................................................................11, 16

*Steering Comm. v. Exxon Mobil Corp.*,
461 F.3d 598 (5th Cir. 2006) ..............................................................................................7, 23

*Sterling v. Velsicol Chem. Corp.*,
855 F.2d 1188 (6th Cir. 1998) ...........................................................................................12, 15

*Szabo v. Bridgeport Mach., Inc.*,
249 F.3d 672 (7th Cir. 2001) ....................................................................................................7

*Vickers v. General Motors. Corp.*,
204 F.R.D. 476 (D. Kan. 2001)............................................................................................8, 9

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000)...................................................................................................11

*Whaley v. Perkins*,
197 S.W.3d 665 (Tenn. 2006)..................................................................................................16

## STATUTES

Tenn. Code. Ann. §§ 70-7-101 to -104 (2009) .........................................................................15

## RULES

Fed. R. Civ. P. 23(a)(4)............................................................................................................22

Fed. R. Civ. P. 23(b)(3)......................................................................................................20, 21

Fed. R. Civ. P. 23(c)(1)(C) .......................................................................................................6

iv

# INDEX OF ATTACHMENTS

**Description**                                                                                                 **Attachment No.**

Deposition of Larry Mays (Sept. 10, 2010), Exhibits 2-3 .............................................................1

Deposition of Larry Mays (Sept. 10, 2010), Exhibit 7 ................................................................2

Deposition of Larry Mays (Sept. 10, 2010), Exhibit 6 ................................................................3

*Cox v. American Synthetic Rubber Co.*, No. 3:06-CV-422-H,
slip op. (W.D. Ky. Dec. 12, 2008) ...............................................................................................4

Map of Assumed Mays Class Area....................................................................................................5

Plaintiff's Objections and Answers to Defendant TVA's First Set of
Interrogatories Regarding Plaintiff's Proposed Class Action (Sept. 7, 2010) ................................6

Plaintiff Rick Barrett's Objections and Supplemental Responses to Defendant TVA's
Interrogatories Regarding Trespass and Nuisance Claims, Case No. 3:09-cv-00054 (June
11, 2010) .........................................................................................................................................7

Excerpts from the Deposition of Gilbert Pickel,
Case No. 3:09-cv-570 (May 20, 2010) ...........................................................................................8

Deposition of Gilbert Pickel,
Case No. 3:09-cv-570 (May 20, 2010), Exhibit 9...........................................................................9

Letter from TVA to Larry Mays
Authorizing Construction of Dock (Mar. 22, 1994) .....................................................................10

Department of the Army Corps of Engineers,
File No. 82,475 (Mar. 7, 1994) .....................................................................................................11

Excerpts from the Deposition of Donald Simon,
Case No. 3:09-cv-09 (Aug. 18, 2010)...........................................................................................12

List "Coal Ash Litigation Plaintiffs" .............................................................................................13

Excerpts from Plaintiff Anthony Lenzi's Responses and Objections to Defendant
TVA's First Set of Interrogatories, Case No. 3:09-cv-00054 (June 1, 2010)...............................14

Excerpts from Plaintiff Alfred Steimel's Supplemental Rule 26(a)(1) Disclosures,
Case No. 3:09-cv-00054 (July 12, 2010).......................................................................................15

Excerpts from Plaintiff Sandra Brown's Responses and Objections to Defendant
TVA's First Set of Interrogatories, Case No. 3:09-cv-00054 (Mar. 10, 2010)..............................16

814904

# I.    INTRODUCTION

The December 22, 2008 ash spill that resulted from a containment dike failure at TVA's Kingston Fossil Plant has spawned individual lawsuits involving over four hundred named plaintiffs, two proposed class actions (originally four), and numerous individual settlements negotiated outside of litigation.[1]  Plaintiff **Larry Mays** now seeks certification of a temporary private nuisance action on behalf of himself and a putative class consisting of an indeterminate number of real property owners with lands abutting the Government's riparian strip on portions of the Emory and Clinch River sections of Watts Bar Reservoir.[2]  The *Mays* lawsuit is unique in being limited to just one cause of action; all other pending related lawsuits assert, in addition to nuisance, disparate claims that range in the different lawsuits from personal injury, emotional distress, and medical monitoring claims to claims for trespass and inverse condemnation.

At the core of Plaintiff Mays' nuisance claim are allegations related to his loss of the recreational use and enjoyment of Watts Bar Reservoir (the "Reservoir").  The Reservoir, however, is not property in which Plaintiff has a legally protected interest, and any alleged interference with his use of the Reservoir waters is therefore not actionable under Tennessee law.  As to the putative class, Plaintiff Mays has not satisfied his burden of defining an ascertainable class, of establishing that class action litigation is the superior method of adjudication for the putative class members' claims, or of showing that common issues of law and fact predominate.

---

[1]    In the event of a potential interlocutory appeal, TVA incorporates by reference here its prior filings before the Court in this litigation related to discretionary function, jury trial, punitive damages, NEPA, inverse condemnation, and causation, ECF Nos. 39-41, 49, 63-64, 72, 91, 105, and 108; *see also Long v. Tennessee Valley Auth.*, 3:09-cv-00114, ECF Nos. 89, 218.

[2]    The *Mays* proposed putative class geographic area includes riparian property in which neither Plaintiff nor any putative class member has a legally protected interest.  Their property rights do not extend below contour elevation 745 or 750, which marks the boundary of Reservoir project property in the apparent putative class area of the Emory and Clinch Rivers.  TVA, *Final Environmental Impact Statement, Watts Bar Reservoir Land Management Plan*, at 1 (Feb. 2009), attached to Case No. 3:09-cv-00064, ECF No. 151-3, PageID 4-6.

To the contrary – the proposed class geographical area is both factually and legally deficient because it is not ascertainable;[3] the numerous pending individual cases and previous settlements amply demonstrate that potential class members have a strong interest in controlling the prosecution of their own claims; and Plaintiff's personal claim vividly illustrates that a nuisance claim premised on the ash spill will succeed or fail based on the circumstances of each individual property owner. In sum, Plaintiff fails to satisfy Rule 23's ascertainability, commonality, typicality, adequacy, predominance and superiority requirements. His motion for class certification must be denied.

## II.    PLAINTIFF MAYS

Plaintiff Mays owns and lives on property at 836 Nelson Drive, Kingston, Tennessee, located near Clinch River Mile Marker 2 approximately 4-5 miles by water from the site of the dike failure. (Larry Mays Dep., ECF No. 114-1, PageID 3096, 3115; Mays Dep. Exs. 2-3, Attach. 1.) Although Plaintiff and other owners commonly refer to such property as "waterfront" property, their property lines actually extend only to the 745 or 750 contour elevation. (PageID 3164 (Plaintiff knows the approximate location of his property line does not lie adjacent to the water); Mays Dep. Ex. 7, Attach. 2 (showing Mays' hand-drawn indication of his property line on photograph of property in blue); Dep. Ex. 6, Attach. 3 (showing parcel boundary line superimposed on aerial photograph of Mays property.)[4] Thus, Plaintiff does not own the

---

[3]    Despite the vagueness of the *Mays* putative class description, it remains clear that the *Mays* proposed class is wholly contained within the proposed putative classes in *Chesney v. TVA*, which begin north of the *Mays* putative class at Emory River mile 6 and continue approximately 45 miles downstream past the Clinch and Tennessee River portions of the Reservoir above Watts Bar Dam.

[4]    To place these contours in perspective in terms of the waterline, the wintertime pool at the time of the ash spill was at contour 737; the normal maximum summer pool is 741 for the Reservoir. *See* Bowling Decl., *Mays*, PageID 2409, 2410.

2

shoreline or riparian rights and is permitted to maintain a dock that provides Reservoir water access only with TVA's permission. (PageID 3165-66.)

Plaintiff's home is an approximately 1200-1400 square foot, wood-frame house with a large deck. (PageID 3132-34; *see also* Attach. 2 (showing house).) Plaintiff lives alone, having been widowed in November 2009. He has two adult sons who live nearby but do not own property within the proposed class area. (PageID 3050.) Plaintiff and his deceased wife purchased the property at issue in 1993. (PageID 3175.) Mrs. Mays loved to entertain, and she and Plaintiff enjoyed using their home for gatherings of family and friends. (PageID 3109.) Even before the ash spill, however, Mrs. Mays' declining health did not permit her to fully enjoy her property; and she had difficulty walking down to the waterline from her own home. (PageID 3147, 3161.)

Following the ash spill, Plaintiff saw what he believed to be fly ash in the water near his property but did not take any action. (PageID 3106.) Although he believes he may have been exposed to fly ash from the Kingston stacks at some point, he has no evidence of that exposure; has never seen fly ash on his own property; and has not collected any samples of ash on his property. (PageID 3045-46; 3164.) Nor has his property ever been tested for the presence of fly ash. (PageID 3151-52.) In fact, Plaintiff has no scientific evidence to suggest that the water or air near his property presents a health hazard, and he does not believe he currently is being exposed to any hazardous substances while on **his** property. (PageID 3153-54.) Mr. Mays acknowledged being vaguely aware of the public studies relating to potential health concerns associated with the ash slide. (PageID 3169, 3190.)

Nonetheless, Plaintiff is claiming loss of use and enjoyment of his property as a result of the ash spill. When questioned about that alleged loss, what Mr. Mays described actually

involved an alleged loss of use and enjoyment of the Reservoir, not his own property. He described how he voluntarily no longer uses his dock, no longer takes his boat out on the water like he used to, and no longer swims (or permits his grandchildren to swim) in the water. (PageID 3110, 3128-29.) He concedes, however, that others do use the water for boating, fishing, and swimming. (PageID 3157 (acknowledging differing individual perceptions of risk), PageID 3191 (others currently using Reservoir), PageID 3169 (new dock installed on neighboring property since spring of 2009).)

Plaintiff also identified a highly individualistic emotional component of his loss of use and enjoyment claim: the emotional effect of reduced time spent entertaining his grandchildren and other family members at his property. Plaintiff contends his family either does not, or will not, visit Plaintiff at his home as frequently as they did prior to the spill because of concerns about the recreational use of the water and that these decisions by his family have deprived him of the "happy, joyful time" he had expected to be able to have at the property. (PageID 3110-11.) Although he blames this diminished family time on the alleged loss of Reservoir use, Plaintiff admits he has never gone with his sons and grandsons to another location on the river. (PageID 3195-96.) Plaintiff also describes himself as a "workaholic" and acknowledges that his sons and their families have lives of their own. (PageID 3051, 3196.)

Plaintiff further claims as damages an inability to sell his property and diminished property value. (PageID 3090, 3111, 3190-91.) Plaintiff purchased his property in 1993 for $92,500 and was aware at that time of its proximity to TVA's Kingston facility. (PageID 3119, 3176.) No independent appraisal of his property has been performed since he refinanced his property in 2005 (PageID 3146); and he has not talked to a real estate agent about selling his property or taken any steps to market it. (PageID 3145.) Although Plaintiff estimates his

property's current market value at $225,000, based solely on his personal opinion, Roane County

reassessed his property in 2010 at $302,200.  (PageID 3184-85, 3182.)

In short, Plaintiff claims no personal injuries, no desire for medical monitoring, and no

emotional distress related to the ash spill (as he put it, "Well, I don't think I have a lot of fear or

anxiety" related to this case).  (PageID 3195; 3100.)  He has not spoken to a psychologist or

psychiatrist about the subject matter of this lawsuit.  (PageID 3041.)  Nor has Plaintiff seen any

need for remediation of his property.  (PageID 3195.)  In fact, other than filing the present

lawsuit, Plaintiff has never made any complaint to TVA or to any regulatory or legislative

authority concerning the ash spill, and he could not identify anything he would like TVA to do

differently.  (PageID 3113, 3192-93.)

## III.    ARGUMENT

### A.    Class Action Certification Standards

Every class action must satisfy the four prerequisites of Rule 23(a) (commonality,

typicality, adequacy, and numerosity) and at least one of the requirements of Rule 23(b).  *In re*

*Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (hereinafter "*In re AMS*").  In addition, the

implied prerequisite of an ascertainable class must also be met.  *Romberio v. UnumProvident*

*Corp.*, No. 07-6404, 2009 WL 87510, at *7 (6th Cir. Jan. 12, 2009).  Despite Plaintiff's assertion

to the contrary (Pl.'s Br., PageID 2990-2991), the burden is on Plaintiff, as the party seeking

class certification, to persuade the Court that each of these requirements has been met and that

the class should be certified.[5]  *In re AMS*, 75 F.3d at 1079.  Citing pre-2003 cases, Plaintiff

similarly claims that Rule 23 is "conditional in nature" and that, if in doubt, a court should

---

[5]     TVA maintains that the Rule 23(a) requirements of commonality and typicality have not
been met.  Rather than separately arguing these points here, TVA directs the Court's attention to
its arguments regarding the lack of predominance under 23(b)(3).  TVA's commonality and
typicality points are subsumed within its discussion of predominance.

certify. (Pl.'s Br., PageID 2980-81.) However, courts no longer are allowed to "conditionally" certify a class action. *See* Fed. R. Civ. P. 23(c)(1)(C) 2003 advisory committee's note (explaining Congress has deleted the provision that formerly authorized conditional certification). Instead, "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." *Id.*

Contrary to Plaintiff's view (Pl.'s Br., PageID 2980, 2987), a court may not accept a moving plaintiff's factual allegations at face value but rather should "probe behind the pleadings" to determine whether a class should be certified. *In re AMS*, 75 F.3d at 1079; *see also In re Hydrogen Peroxide Anti. Litig.*, 552 F.3d 305, 316, 321 (3d Cir. 2009) ("Although the trial court has discretion to grant or deny class certification, the court should not suppress 'doubt' as to whether a Rule 23 requirement is met . . . ."). Although a court may not base its certification decision on whether it thinks a proposed class is likely to win on the merits, "a court is allowed to look beyond the pleadings on a class certification motion to determine what type of evidence will be presented by the parties." *Rodney v. NW. Airlines, Inc.*, 146 Fed. App'x. 783, 785 (6th Cir. 2005). Indeed, accepting Plaintiff's class offerings at face value would be contrary to the "rigorous analysis" required of a court examining the propriety of class certification. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

Plaintiff generally relies upon older environmental cases that typically accord little weight to the factual record or to how a case actually might be tried as a class. In the last decade, however, Federal appellate courts increasingly have emphasized the importance of analyzing the relevant factual record at the time of certification in all class cases,[6] including class decisions in

---

[6]     *See In re New Motor Vehicles Canadian Export Anti. Litig.*, 522 F.3d 6 (1st Cir. 2008) (reversing lower court for not engaging in a "searching inquiry" into the facts); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) (reversing certification for failing to "resolve[]

6

alleged environmental contamination cases, which frequently involve property-specific, fact-intensive nuisance claims. *See, e.g.*, *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1149 (10th Cir. 2010) (reversing a decision cited by Plaintiff (PageID 2985) in which the district court certified a class based on alleged nuclear contamination but failed to consider whether each element of nuisance and trespass claims could be proved with classwide evidence); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 605 (5th Cir. 2006) (affirming denial of class certification of proposed class of persons exposed to smoke from fire at a chemical plant); *Benefield v. Int'l Paper Co.*, No. 2:09cv232-WHA, __ F. Supp. 2d __ , 2010 WL 4180757, at *14 (M.D. Ala. Oct. 20, 2010) (denying request to certify emissions nuisance and trespass class action); *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 232-34 (E.D. Pa. 2010) (denying request to certify vinyl chloride nuisance and medical monitoring class action).[7]

## B. Plaintiff's Class Definition Is Fundamentally Flawed

Before there can be a class action, there must first be a "class" – an ascertainable group of persons defined in a way logically related to the defendant's conduct of which plaintiff

---

factual disputes relevant to each Rule 23 requirement"); *Gariety v. Grant Thornton LLP*, 368 F.3d 356, 366 (4th Cir. 2004) (vacating class certification order because trial court accepted plaintiff's allegations as true); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672 (7th Cir. 2001) (reversing certification because lower court failed to "make whatever factual and legal inquiries are necessary under Rule 23"); *Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) (affirming denial of class certification because trial court failed to "consider[] all expert testimony offered by both sides" and "afforded that testimony such weight as [it] deemed appropriate").

[7]  *See also, e.g.*, *Cox v. Am. Synthetic Rubber Co.*, No. 3:06-CV-422-H, slip op. at 11-12 (W.D. Ky. Dec. 12, 2008)  (denying request to certify chemical emission and odor trespass class), Attach. 4; *Rhodes v. E.I. Pont de Nemours & Co.*, 253 F.R.D. 365, 381 (S.D. W. Va. 2008) (denying request to certify water contamination nuisance and medical monitoring class); *Cochran v. Oxy Vinyls LP*, No. 3:06CV-364-H, 2008 WL 4146383, at *13 (W.D. Ky. Sept. 2, 2008) (denying request to certify fallout and odor nuisance class action); *Duffin v. Exelon Corp.*, No. CIV A 06 1382, 2007 WL 845336, at *7 (N.D. Ill. Mar. 19, 2007) (denying request to certify nuclear contamination nuisance class); *Brockman v. Barton Brands, Ltd.*, No. 3:06CV-332-H, 2007 WL 4162920, at *10 (W.D. Ky. Nov. 21, 2007) (denying request to certify fallout and odor nuisance class); *Fisher v. CIBA Specialty Chem. Corp.*, 238 F.R.D. 273, 317 (S.D. Ala. 2006) (denying request to certify pesticide emission nuisance class); *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 685 (S.D. Ala. 2005) (denying request to certify mercury nuisance class).

complains. The plaintiff has the burden of demonstrating that the proposed class is precisely

defined and that members of the class can be identified by objective criteria. *Romberio*, 2009

WL 87510, at *7; *see also Vickers v. General Motors Corp.*, 204 F.R.D. 476, 479 (D. Kan. 2001)

(rejecting proposed class on ascertainability grounds based on failure to methodically determine

class boundaries). Although Plaintiff Mays concedes he must present "objective criteria"

evidencing a "precisely defined class" whose members "possess the same interest and suffer the

same injury," (Pl. Br., PageID 2979), he has failed to do so.

Plaintiff proposes the following class definition:

> All individuals who own or owned real property located on the Emory or Clinch
> Rivers downstream from the TVA Kingston Fossil Plant in Roane County,
> Tennessee, during the period beginning on December 22, 2008 and ending on the
> date of trial who suffered available damages under Tennessee nuisance law.

(Pls.' Mot., PageID 2949.) Plaintiff asserts class membership can be determined by reference to

some unspecified "available public sources," but he does not identify those sources. (Pl.'s Br.,

PageID 2980.) Offering broad assurances and relying on undisclosed information repositories

will not suffice because Plaintiff is **required** to show the Court that class members can be

identified in a way that is administratively feasible and not burdensome for the Court. *Rios v.

Sec'y of Labor*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983).

In fact, without reference to some geographic coordinates or river mile marker, even

TVA cannot determine what, exactly, Plaintiff intends by use of the phrase "located on the

Emory River or Clinch River downstream from the TVA Kingston Fossil Plant." Given that the

Kingston Fossil Plant's physical boundary spans in excess of five miles along the west bank of

the Emory River and along the west bank of the Clinch River to approximately river mile 2.5, the

class definition is fundamentally irreconcilable with the geography. (*See* Map of Assumed Mays

Class Area, Attach. 5.) Similarly, Plaintiff nowhere explains precisely what portion of the

Clinch River lies within his proposed class. Accordingly, it is not feasible to determine which properties are encompassed by the definition, thus rendering the proposed class unascertainable.

Moreover, Plaintiff's definition conjoins property owners living near the Emory River, to whom a recreational advisory warning regarding the use of that river adjacent to the Kingston Plant applied from June 2009 to May 2010, with those owners (like Mr. Mays) livingalong the Clinch River to whom it did not – thus presenting two very different factual circumstances with regard to the recreational use of the Reservoir. *Available at* http://www.state.tn.us/environment/ kingston/pdf/current/wattsbar_rec_advisory.pdf. This factor counsels against Plaintiff's proposed class definition as well.

Finally, the lack of a scientific (or any) basis logically relating the proposed class boundary to TVA's conduct renders this case uncertifiable. *See Cochran*, 2008 WL 4146383, at * 6 (finding "an insufficient relationship between the proposed class definition and the evidence provided regarding [defendant's] emissions"); *Duffin v. Exelon Corp.*, No. CIV-A-06-C-1382, 2007 WL 845336, at *3-4 (N.D. Ill. Mar. 19, 2007) (finding proposed class overbroad due to lack of evidence showing contamination reached the outer class boundaries); *Vickers*, 204 F.R.D. at 477-79 (finding expert report did not support class definition); *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602-03 (D. Colo. 1990) (finding proposed boundaries did not appear to "relat[e] to the defendants' activities," but were instead "arbitrarily . . . drawn lines on a map").[8]

When asked during class discovery to provide the scientific basis for his proposed class boundary, Plaintiff objected on relevance and privilege grounds. (*See* Pl.'s Resps. to TVA's 1st

---

[8]     In an obvious attempt to mask this absence of proof, Plaintiff simply observes that "many courts have certified classes defined by geography, as the class here is defined by geographic contours." (Pl's Br., PageID 2985.)  But pointing to scientifically sound geographic class areas in other cases cannot salvage the proposed class area here, as the geographical boundaries contained within the class definition are devoid of any scientific legitimacy.

9

Set of Interrogs. Re Class, No. 8, Sept. 7, 2010, Attach. 6.) Similarly, when asked to identify,

*inter alia*, the Emory River mile markers defining his class geographic area, Plaintiff responded

that "this Interrogatory would require Plaintiff to commission a survey or to disclose expert

opinion testimony, but Plaintiff and his counsel have neither commissioned any such survey at

this time, nor have they made any determination as to the necessity for or identity of such an

expert." (*Id*. at No. 5.) Plaintiff did acknowledge, however, that he does not contend that

chemicals, metals, or compounds "have migrated in equal concentrations to all of the waterways

or the surrounding environment referred to in his Complaint or proposed class definition." (*Id*. at

No. 1.)

Plaintiff has undermined his certification effort further by defining the proposed class to

include only individuals "who suffered available damages under Tennessee nuisance law."

Obviously, such a determination could not be made by reference to objective criteria but rather

would require the Court to conduct a preliminary adjudication of every putative class member's

claim. This places the cart before the horse. "[T]he need for [] individualized fact-finding

makes the [proposed] class definition unsatisfactory." *Romberio*, 2009 WL 87510, at *7; *see

also Benefield*, 2010 WL 4180757, at *4 (certification not appropriate where plaintiffs had

"asked the court to find facts, based on disputed evidence, to determine who is within the

class."); *Adair v. Johnston*, 221 F.R.D. 573, 578 (M.D. Ala. 2004) ("When individualized fact-

finding and litigation would be necessary in order to identify class members, class certification is

inappropriate.").

Finally, Plaintiff's inclusion within the proposed definition of all persons who owned

property during the period beginning on December 22, 2008 and ending on the date of trial

introduces further complications by (1) requiring an examination of all sales within the proposed

class to identify the proposed Plaintiffs who sold property after the spill (who then will need to be located), and (2) raising the individualized question of the legal effect to be accorded to proposed Plaintiffs who purchased property since the spill – presumably with full knowledge of the spill – and moved to the claimed nuisance having received the *benefit* of any supposed adjustment in post-spill property value included in the purchase price.

**C.     Plaintiff Cannot Satisfy Rule 23(b)(3)'s Predominance Requirement.**

A Rule 23 predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997), and represents a standard "far more demanding" than the commonality requirement of Rule 23(a). *Id*. at 623-24; *In re AMS*, 75 F.3d at 1084 (citation omitted). Because the "nature of the evidence that will suffice to resolve a question determines whether the question is common or individual," *Blades*, 400 F.3d at 566, "'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *In re New Motor Vehicles Can. Exp. Anti. Litig.*, 522 F.3d at 20 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)); *see also Cook*, 618 F.3d at 1149.

**1.     Physical contamination of property has not been, and cannot be, shown on a class-wide basis.**

Plaintiff's own nuisance claim perfectly illustrates that individual issues predominate in the case he seeks to certify. For purposes of establishing liability, the focus must be on whether and how the ash spill unreasonably interfered with each putative class member's use or enjoyment of **his** own property. As stated in *Sadler v. Tennessee*, 56 S.W.3d 508, 511 (Tenn. Ct. App. 2001) (internal citation omitted):

11

A private nuisance is created where a landowner uses his property in such a manner as to unreasonably interfere with plaintiff's use or enjoyment of his own property.

*See also Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn. 1981).

Such an interference with property typically is demonstrated by the actual physical presence of an alleged contaminant on the property. *See, e.g.*, *Olden v. LaFarge Corp.*, 383 F.3d 495, 497 (6th Cir. 2004) (citing loss of use and enjoyment of property where "cement dust emitted by the plant [] penetrated into the siding on houses, killed rose bushes and left a white film over houses and vehicles"); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1193 (6th Cir. 1998) (describing testing showing chemical contamination of wells on plaintiffs' property).

While perceptible sensory conditions (smoke, odor, or noise, for example) can constitute a nuisance, here the evidence shows no physical encroachment of any type has disturbed Plaintiff's use of his property. Indeed, Plaintiff readily conceded at his deposition that he has never seen fly ash on his property and that he has *no* scientific evidence of contaminated water or air affecting his property. (Mays Dep., PageID 3153-54, 3164.) Mays further testified he has no reason to believe he is being exposed to any hazardous substances while on his property. (PageID 3154.) Depositions and discovery responses of individual plaintiffs who appear to live within the proposed Mays class boundaries similarly establish that many putative class members make no claim of ash physically present on *their* properties. [9] (*See, e.g.*, Rick Barrett Resp. to TVA's Trespass Nuisance Interrogs., No. 2, June 11, 2010, Attach. 7; Gilbert Pickel Dep., Case No. 3:09-cv-570, May 20, 2010, 47- 49, Attach. 8; *see also* Pickel Dep. Ex. 9, Attach. 9.)

---

[9] As noted previously, Plaintiff has not provided addresses, a map, or even river mileage marker references, thereby making it impossible to determine precisely who lives in the proposed class geographical area.

In the absence of physical contamination evidence, Plaintiff's decision to rely solely on the fact of the ash spill to show predominance of common factual and legal questions is fatal to class certification. Unlike plaintiffs in cases relied upon by Plaintiff (including *Olden*, *Sterling*, and *O'Connor*), Plaintiff here has "failed to provide evidence that *liability* can be determined on a classwide basis, *i.e.*, evidence that liability is a common factual and legal question." *Brockman*, 2007 WL 4162920, at *8-9 (declining to certify claims for nuisance and trespass based on plaintiffs' "wholly subjective belief" that their properties were affected by defendant's emissions and that others within a two-mile radius must be similarly affected; and noting that "*Olden* does not dictate a particular result"); *see also Gates*, 265 F.R.D. at 233 ("Even assuming that the fact of contamination was provable by common proof here, liability [] cannot be proven with common proof.").

In sum, Plaintiff's failure to provide the Court with evidence that contamination from the spill, reached his (or any other putative class member's) property in any form or amount or by any means is alone a persuasive reason for not certifying a class. *See Cox*, slip op. at 11 (denying class certification in emissions nuisance case because plaintiff failed to offer evidence that emissions reached the entire class area); *Fowler v. Ohio Edison Co.*, No. 07-JE-21, 2008 WL 5233476, at *7 (Ohio Ct. App. 2008); *accord Fisher*, 238 F.R.D. at 297-300 (finding class representatives lacked standing due to lack of evidence); *Hager v. Waste Tech. Indus.*, No. 2000-co-45, 2002 WL 1483913, at *16 (Ohio Ct. App. June 27, 2002) (dismissing proposed nuisance class for lack of admissible evidence to support class representative's claim).

### 2. Plaintiff's proffered factual bases for nuisance are not legally viable and, in any event, would unquestionably require individual proof.

In the absence of any evidence demonstrating some physical encroachment affecting his property or any other effect that "endangers life or health, gives offense to the senses, violates

13

the laws of decency, or obstructs the reasonable and comfortable use of [his] property," *Pate*,

614 S.W.2d at 47, Plaintiff resorts to a completely novel (and individualized) proof of nuisance.

He claims a nuisance based on his voluntary and personal choice not to engage in recreational

use of the Reservoir (which is not his property) because that choice led to decreased

opportunities to socialize with family members and decreased his satisfaction with his

relationships.

    This sort of attenuated claim cannot suffice as a matter of nuisance law. To begin with,

Plaintiff has no legally protected interest in the river or the use of the Reservoir. Plaintiff's

response to TVA's motion for summary judgment based on lack of causation argues that this

lack of ownership down to the shoreline is no bar to his nuisance claim because "TVA – and the

U.S. Government – granted Larry Mays express permission to build a dock and to use and enjoy

that land by way of an easement." (ECF No. 114-1, PageID 3023.) Plaintiff is simply wrong. In

fact, the permit issued to Plaintiff by TVA for the construction of the dock contains the following

term: "You [Mr. Mays] recognize and understand that **this Approval of Plans conveys no**

**property rights**, grants no exclusive license, and in no way restricts the general public's

privilege of using shore land owned by or subject to public access rights owned by TVA." (*See*

March 22, 1994 Permit Letter from TVA to Mays Authorizing Construction of Dock, Attach.10.)

*See also Castleman v. TVA*, No. 4:06-cv-17, 2006 WL 2136414, at *4 (E.D. Tenn. July 28, 2006)

("[A] fully-issued Permit does not vest the Permit-holder with a property interest . . ."); 18

C.F.R. Part 1304.2 (2010) (TVA's implementing regulations, which provide that "[a] TVA

permit conveys no property interest"). The Department of the Army Corp of Engineers permit

issued to Mays also specifically provides that "[t]his permit does not grant any property rights or

exclusive privileges." (*See* Mar. 7, 1994 Department of the Army Corps. of Engineers, File No. 82,475, Attach. 11.)

Further, as a matter of Tennessee statutory law, TVA has no duty to maintain the Reservoir such that it would be safe (or, more accurately here, perceived by Plaintiff to be safe) for recreational activities such as swimming, boating, or fishing by Plaintiff or any other putative class members. Tenn. Code. Ann. §§ 70-7-101 to 104 (2009). Nor does Tennessee law support the claim as formulated by Plaintiff.

Even assuming arguendo that Plaintiff's nuisance theory could withstand legal challenge (which it cannot), it still would require individual examination of the nature, extent, and causes of each putative class member's claim for lost use and enjoyment of his/her own property. This analysis would be required in order to establish liability for private nuisance and the prospect of such individualized proof of liability forecloses the possibility of certification. "[W]here as here no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member . . . , and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy." *Sterling*, 855 F.2d. at 1197; *see also Duffin*, 2007 WL 845336, at *7 (denying class certification in nuisance case because "[s]ignificant trial time would be devoted to determining separate issues of liability regarding individual properties"); *Fisher*, 238 F.R.D. at 307-08 (same). In other words, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 172 (3d Cir. 2001).

Plaintiff's reliance on *Freeman v. Blue Ridge Paper Prods., Inc.*, 229 S.W.3d 694 (Tenn. Ct. App. 2007), to suggest that individualized hearings concerning these (and any other facts

15

necessary to support a nuisance claim) are unnecessary and thus do not affect predominance is unavailing. First, unlike the *Freeman* class, Plaintiff and the proposed class members here are not riparian owners and have no legally protectable interest in the Reservoir waters. Second, as the Tennessee Court of Appeals observed, *Freeman* turns expressly on the substantive law of North Carolina, not that of Tennessee. *Id*. at 705.

### 3. Proof of causation necessarily will be specific to individual class members.

Private nuisance includes an element of causation linking the alleged loss of use and enjoyment of one's own property with an unreasonable interference caused by Defendant's conduct. *See Sadler*, 56 S.W.3d at 511; *Pate*, 614 S.W.2d at 47. The record pertaining to Plaintiff's own nuisance claim again perfectly illustrates the individualized nature of the proof required to establish causation – particularly where no proof of legally sufficient physical effect on Plaintiff's property exists. As described in the preceding subsection, Plaintiff's claim centers on an alleged inability to use his property to entertain, despite the fact that there is neither an alleged hazard on his property nor any reasonable, scientifically-supported basis for believing one exists on adjacent TVA property. Thus, Plaintiff's claimed loss is obviously individual in nature and not necessarily typical of all (or any) others in the putative class. His stated loss is an emotional one linked to his feelings for his grandchildren (and possibly to a way of life that existed only when his wife was still living), for which there is presumably no legal basis for recovery. In *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006), for example, even in a situation where an actual injury to property existed, the court found that: "[U]nder ordinary circumstances, there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his or her property."

Finally, the record suggests several possible alternative causes – unrelated to the ash spill – for Plaintiff's asserted changed use of his property. Plaintiff testified that, approximately one year after the spill in November of 2009, he lost his wife of more than sixteen years to respiratory failure likely linked to epilepsy – and that it had been his wife who had loved to entertain at their home. (PageID 3047, 3109.) Plaintiff also testified that since the ash spill, his sons have not been frequent visitors to his property because "they have their own lives and [Plaintiff is] a workaholic." (PageID 3051; *see also* PageID 3196). Thus, to the extent these factors have contributed to diminished family time at his property, they should be considered as contributing or perhaps even alternative causes of the alleged loss.

Plaintiff's own health should also be considered as constituting an alternate cause. In moving for an extension of time within which to respond to discovery, Plaintiff submitted an affidavit in which he recounted having emergency surgery on April 30 for a life-threatening "strep infection" in his left elbow; as of mid-May, Plaintiff stated, "I am weak, tired, and have not fully recovered from this infection. I am working light hours and trying to get better." (ECF No. 82-2, PageID 1712.) Again, Plaintiff's physical condition (for which he is making no claim against TVA) may have contributed to the claimed lost use and enjoyment of certain aspects of his property – and is unrelated to the ash spill. In the nearly two years that have elapsed since the ash spill occurred, other putative class members, like Plaintiff, are likely to have incurred lifestyle changes (both voluntary and involuntary) affecting their use and enjoyment of their properties, including changes related to increasing age and/or decreased mobility.

In this same regard, the reality of personal risk perception as it affects use of property raises another individual issue impacting the potential for nuisance-related liability. For example, Plaintiff describes his diminished use of the Reservoir (*i.e.*, swimming, boating, etc.) as

17

an element of the loss of use and enjoyment of his property.[10]  Plaintiff openly acknowledged,

however, that he has a different perception of the risks associated with the Reservoir water than

other potential class members he seeks to represent:

> Q.     Haven't some health reports come out about the water?
>
> A.     I have heard reports that came out that said, hey, it's safe to drink it; it's safe to do this or that. Hey, you go do it. I'm not, because I have my own fears and apprehensions.
>
> Q.     Those are your personal beliefs and feelings?
>
> A.     Yes, sir.
>
> \* \* \* \*
>
> Q.     Sure. As we talked about earlier, there are individuals now who are getting out on the lake and using it in various ways?
>
> MS. MYERS:          Objection.
>
> A.     . . . Yes, sir. That's true. Just like I said, there is a lot of people that do things that I don't approve of I wouldn't do, but you do it. And there are things that you do that I wouldn't do. I mean, you are going to have that. We are all humans.

(PageID 3153, 3191.)  Plaintiff also testified he does not see himself being willing to swim in the

lake for several more years (PageID 3197.)  However, a multitude of other area residents,

including plaintiffs in other pending cases, evidence no such concerns.  (D. Simon Dep., No.

3:09-cv-09, 93, 160, Aug. 18, 2010 (noting Simon already had skied barefoot in the Emory River

on 77 days in 2010 as of mid-August), Attach. 12; Decl. of David Luttrell, *Mays* Doc. 108-1

---

10      Plaintiff offers no scientific evidence to verify the reasonableness of the perceived risk for which he seeks to collect.  Indeed, the only significant scientific evidence on this front is the Public Health Assessment by the Agency for Toxic Substances and Disease Registration and the Tennessee Department of Health ,which concluded, among other things, that there was no risk associated with recreational activities on the Clinch River.  *See* Tenn. Dept. of Health, *Public Health Assessment: Final Release*, ECF. No. 108-2, PageID AII-3 to AII-319.  Tennessee law has long recognized that "fears [] produced by imaginary dangers" are insufficient to support a finding of nuisance.  *Cheatham v. Shearon*, 31 Tenn. (1 Swan) 213, 216 (1851); *accord Bain v. Wells*, 936 S.W.2d 618, 624 (Tenn. 1997) (applying same principle to a negligence action); *Cook*, 618 F.3d at 1145 ("[A] scientifically unfounded risk cannot rise to the level of an unreasonable and substantial interference.").

18

(photographs of people actively engaged in post-spill recreational activities on the Reservoir, ECF No. 108-1, PageID AI-34 to AI-51).)  In fact, Plaintiff himself admitted he was tempted frequently during 2010 to take his boat out on the lake but decided not to simply because he did not wish to boat alone:

> A.    I woke up a lot of mornings this summer, and it was a beautiful day.  And I said wouldn't it be nice to do that? But my grandkids and kids won't come down and do it with me, so I won't go get on the lake myself, no.
>
> BY MR. SHERK:
>
> Q.    Then that's your decision, correct?
>
> A.     Yes, sir.

(PageID 3198.)  Obviously, before liability may be assessed by the finder of fact for any asserted loss of use and enjoyment, it must first be established with individualized evidence subject to cross-examination.

### 4.    Damages for a private nuisance can only be determined by property-specific evaluations.

The proper measure of damages for a temporary nuisance is "the injury to the value of the use and enjoyment of the property, which is usually shown by evidence of the extent that the rental value of the property is diminished by the nuisance" during the existence of the nuisance. *Pate*, 614 S.W.2d at 48.  Thus, the amount of legally recoverable damages depends upon factors unique to each property, including: (1) the property's zoning, parcel size, location, features, and condition that would dictate its market rental value both before and after the spill, and (2) the length of time the use and enjoyment of the property has been (or will be) impaired.

Plaintiff neither acknowledges the individualized evidence required to prove such damages nor suggests any means or proven methodology by which such damages could be calculated on a classwide basis.  This is not a matter of a mere mechanical tabulation of damages.  *See Gates*, 265 F.R.D. at 233 ("[W]hether all members of the class actually suffered

19

an economic injury is a question of liability, not damages.") Reliable estimates of market rental value pre- and post-spill, particularly of putative class properties spread over miles of shoreline, cannot be accomplished on a classwide basis. Rather, these estimates will require individualized property appraisals conducted by qualified professionals applying recognized property valuation techniques to ensure appropriate adjustments for non-spill-related factors affecting rental value, including, but not limited to, economic conditions during the period at issue. *E.g.*, *Corley v. Entergy Corp.*, 220 F.R.D. 478, 486 (E.D. Tex. 2004) (denying certification because "each landowner is entitled to damages based on the specific characteristics of his or her land"); *accord LaBauve*, 231 F.R.D. at 642.

**D.      Plaintiff Cannot Satisfy Rule 23(b)(3)'s Superiority Requirement.**

In addition to proving the demanding predominance requirement, Plaintiff also must prove his proposed class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors relevant to this inquiry include:

(A)      The class members' interests in individually controlling the prosecution or defense of separate actions;

(B)      The extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)      The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)      The likely difficulties in managing a class action.

*Id*. In the present context, each of these factors weighs heavily against class certification.

**1.      The Court's docket argues against a finding of superiority.**

The advisory committee note to Rule 23 directs that, in assessing superiority, "the court should inform itself of any litigation actually pending by or against the individuals. **The interests of individuals in conducting separate lawsuits may be so strong as to call for**

20

**denial of a class action.**" *See* Fed. R. Civ. P. 23(b)(3) 1966 advisory committee's note (emphasis added); *see also Benefield*, 2010 WL 4180757, at *12-13 (finding the pendency of a separate lawsuit involving hundreds of individual plaintiffs based on the same alleged emissions precluded a finding of superiority).[11] The Court need look no further than its own docket to know putative class members have a strong interest in controlling the prosecution of separate actions.

Plaintiff Mays is but one of over 400 individuals to have filed suit against TVA as a result of the ash spill. At present, 299 individual plaintiffs remain in *Auchard* (Case No. 3:09-cv-00054); 20 in *Scofield* (Case No. 3:09-cv-00064); 26 in *Raymond* (Case No. 3:09-cv-00048); 9 in *Chesney* (Case No. 3:09-cv-09); and 101 plaintiffs in fifty or so other cases. Separately, an additional 135 plaintiffs have voluntarily dismissed their lawsuits. *See* List entitled "Coal Ash Litigation Plaintiffs" (listing by name, case, and status plaintiffs who have sued TVA since the spill), Attach. 13. Many of these individual plaintiffs own property within the geographic boundaries of the presumed *Mays* putative class. *See* Map of Assumed Mays Class, Attach. 5

Discovery from individuals presumably living within the proposed *Mays* class borders confirms that some putative class members want to pursue claims for personal injury (*e.g.*, *Auchard* plaintiff Anthony Lenzi), medical monitoring (*e.g.*, *Auchard* plaintiff Alfred Steimel),

---

[11] *See also Robertson v. Monsanto Co.*, 287 Fed. App'x. 354 (5th Cir. 2008) (reversing for lack of superiority because the record showed that already-filed individual lawsuits were superior); *Lewallen v. Medtronic USA, Inc.*, No. C 01-20395 RMW, 2002 WL 31300899, at *6 (N.D. Cal. Aug. 28, 2002) (denying certification where twenty individual actions were pending in the district and other lawsuits could be pending in other jurisdictions because a class action would not reduce the possibility of multiple lawsuits but would instead be merely one additional lawsuit); *Kemp v. Medtronic, Inc.*, No. 1:97-CV-00103-SSB, 1998 WL 35161989, at *10 (S.D. Ohio Feb. 11, 1998) (finding that resolution of individual suits was preferable over a single class action trial followed by hundreds of mini-trials and that plaintiffs would not inundate the court system with a burdensome amount of lawsuits if certification were denied); *McGuire v. Int'l Paper Co.*, No. 1:92-CV-593BRR, 1994 WL 261360 (S.D. Miss. Feb. 18, 1994) (declining to certify a class in deference to existing filings).

and/or emotional distress (*e.g.*, *Auchard* plaintiff Sandra Brown), all of which Plaintiff willingly abandons in an effort to obtain certification. (*See* A. Lenzi Resp. to 1st Interrogs., Nos. 3, 4(a), June 1, 2010, Attach. 14; A. Steimel Sup. Rule 26(a)(1) Disc., No. 3, July 12, 2010, Attach. 15; S. Brown Resp. to 1st Interrogs., Nos. 3, 4(a), Mar. 10, 2010, Attach. 16.)

Thus, contrary to Larry Mays, who wants to limit recovery for his proposed class to claims for private temporary nuisance, other plaintiffs want to litigate additional matters ranging from personal injury to inverse condemnation.[12] In effect, Plaintiff's heavy emphasis on the fact he asserts only a nuisance claim on behalf of the proposed class effectively forecloses other claims by putative class members under the rule against claim splitting and actually undermines his request for certification. *See Cochran*, 2008 WL 4146383, at *10; *see also* Fed. R. Civ. P. 23(a)(4); *Chambers v. Colonial Pipeline Co.*, 296 F. Supp. 555, 558 (E.D. Tenn. 1968) (noting that a "party cannot avoid the effects of res judicata by splitting a cause of action or failing to assert matters in the former litigation which were properly subject to litigation there"); *Isabel v. Velsicol Chem. Corp.*, No. 04-2297 DV, 2006 WL 1745053, at *7 (W.D. Tenn. June 20, 2006) (denying certification in part due to abandonment of personal injury and emotional distress claims). Also, many individuals have chosen either not to file suit or to resolve any real property or personal property claims through means short of litigation, including members of Mays' putative class.

In any event, "[t]he most compelling rationale for finding superiority in a class action – the existence of a negative value suit – is wholly missing in this case." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996); *accord O'Neal v. Wackenhut Servs., Inc.*, No. 3:03-CV-

---

[12]    This variability in claims asserted also undercuts Plaintiff's argument that he has satisfied Rule 23(a)(3)'s "typicality" requirement.

397, 2006 WL 1469348, at \*23 (E.D. Tenn. May 25, 2006). "[T]he fact that persons individually have filed suit illustrates that those with seemingly meritorious claims have the incentive and resources to pursue their own actions." *Kemp v. Medtronic, Inc.*, No. 1:97-cv-00103-SSB, 1998 WL 35161989, at \*10 (S.D. Ohio Feb. 11, 1998).

In addition, because Mays here claims that the spill resulted in a significant reduction of property value for every class member, he and the putative class members could employ tort lawyers on a contingency basis to bring individual actions as did hundreds of other plaintiffs in pending Kingston cases. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 350 (S.D.N.Y. 2002). Finally, it is highly significant that, "unlike in many situations where a class is certified, class treatment here will not deliver the traditional benefit of res judicata" in view of those other pending suits. *Id.*

### 2. Superiority is lacking because centralization already exists.

Turning next to the question of "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," Rule 23(b)(3)(C), Plaintiff's class action would change nothing. Venue considerations and TVA's Federal agency status already guarantee that all related litigation will proceed before this Court.

This centralization has allowed the Court – without first certifying a class action – to oversee common discovery and scheduling among all pending cases and consolidate briefing among all pending cases on overarching issues, such as the scope of TVA's discretionary function defense, TVA's entitlement to a bench trial, the unavailability of punitive damages, and whether ash from the spill has impacted any non-TVA property. *Accord Steering Comm.*, 461 F.3d at 605 (finding lack of superiority "where the district court has been careful to manage the litigation efficiently through the judicious use of consolidated summary judgment and other tools

such as *Lone Pine* orders").  Moreover, because the Court will serve as the finder of fact in every

spill-related case, *see Mays v. Tennessee Valley Auth.*, 699 F. Supp. 2d 991, 1033 (E.D. Tenn.

2010), the Court can continue to address overarching matters of fact and law absent class

certification.

### 3.    Plaintiff's class proposal is inefficient and unmanageable.

"The likely difficulties in managing a class action," 23(b)(3)(D), further illustrate why

Plaintiff's proposed class action is inferior.  Plaintiff offers no reliable authority to show how the

individualized inquiries underlying putative class members' nuisance claims can be addressed

without canceling the supposed efficiency of class treatment.  *Accord Rodney*, 146 Fed. App'x.

at 791 (finding class certification inefficient because it would "inevitably degenerate" into

separate mini-trials); *Armstrong v. Whirlpool Corp.*, No. 3:03-1250, 2007 WL 676694 (M.D.

Tenn. Mar. 1, 2007) (same).  Stated differently, "the economies of scale achieved by class

treatment are more than offset by the individualization of numerous issues relevant only to a

particular plaintiff." *In re AMS*, 75 F.3d at 1085.[13]

In fact, Plaintiff provides no trial plan at all.  *See Rodney*, 146 Fed. App'x. at 786 (stating

a court, in deciding class certification, must consider how a trial on the merits would be

conducted); *see also Hydrogen Peroxide*, 552 F.3d at 311 (noting an increase in the number of

courts that require a trial plan at the class certification stage).  Rather, Plaintiff objects that it

would be "unreasonable" to expect a trial plan now but promising one can be devised later.

(Attach. 6, No. 10).  But "[g]iven the plaintiffs' burden, a court cannot rely on [mere] assurances

---

[13]     The fate of a district court case Plaintiff cites as an analogy is instructive.  (Pls.' Br.,
PageID 5387, 5396 (citing *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993).)  After
15 years of discovery, a four-month class trial, and a nearly $1 billion verdict, the Tenth Circuit
reversed the decision Plaintiff cites in light of the trial court's failure to consider whether the
elements of the plaintiffs' claims were amenable to classwide resolution.  *Cook v. Rockwell Int'l
Corp.*, 618 F.3d at 1149.

24

of counsel that any problems with predominance or superiority can be overcome." *Castano*, 84

F.3d at 742.

## IV. CONCLUSION

For all of the foregoing reasons and upon the authorities cited, the Court should deny

Plaintiff Larry Mays' request for class certification.

Respectfully submitted by counsel for Defendant TVA,

*s/Mark D. Anstoetter*_____
Mark D. Anstoetter (MO Bar # 47638)
John K. Sherk, (MO Bar # 35963)
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550

Edwin W. Small (TN BPR 012347)
Assistant General Counsel
Peter K. Shea (TN BPR 005573)
Brent R. Marquand (TN BPR 004717)
James S. Chase (TN BPR 020578)
David D. Ayliffe (TN BPR 024297)
Elizabeth A. Ward (TN BPR 026648)
TVA GENERAL COUNSEL'S OFFICE
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865-632-3021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

_s/Mark D. Anstoetter_
Attorney for Defendant TVA
