UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| LARRY MAYS | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:09-CV-06 |
| V. | ) | (VARLAN/GUYTON |
| | ) | |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Defendant, | ) | |

| GEORGE CHESNEY, ET AL., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:09-CV-09 |
| | ) | (VARLAN/GUYTON) |
| V. | ) | *Consolidated Lead Case for Discovery* |
| | ) | *for 3:09-CV-14 and 3:09-CV-114* |
| TENNESSEE VALLEY AUTHORITY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

These related actions are before the Court pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the referral of the Honorable Thomas A. Varlan, United States District Judge, for disposition of matters pertaining to discovery and trial preparation. Now before the Court are the parties' motions for class certification, [Doc. 110 in Case No. 3:09-CV-06; Doc. 242 in Case No. 3:09-CV-09], and the Defendants' responses in opposition to class certification, [Doc. 115 in Case No. 3:09-CV-06; Docs. 276 and 280 Case No. 3:09-CV-09], along with the Plaintiffs' reply briefs and the parties' respective supplemental materials.

For the reasons more fully explained below, the Court finds that the Plaintiffs' motions are not well-taken, and the Court **RECOMMENDS** that they be **DENIED**.

## I. BACKGROUND

The facts underlying the instant suit are familiar to the parties and the Court, having been stated in detail throughout these cases. In summary, the Tennessee Valley Authority ("TVA") operates power production facilities throughout the country, including the Kingston Fossil Plant located in Roane County, Tennessee. The coal ash waste produced at the Kingston Fossil Plant is stored in wet containment facilities at nearby Swan Pond. On December 22, 2008, one of the coal ash containment dikes at the Swan Pond facilities failed. As a result of the dike failure, approximately 5.4 million cubic yards of coal ash sludge spilled from the 84-acre containment area of the Swan Pond facilities to an adjacent area of about 300 acres, consisting of primarily the Watts Bar Reservoir, the Clinch and Emory Rivers, and government and privately owned shoreline properties. See Mays v. TVA, 699 F. Supp. 2d 991, 995-1000 (E.D. Tenn. 2010) (providing a more detailed recitation of the events leading up to and following the ash spill).

A total of 592 persons, who allege their person and/or their property have been damaged by the ash spill, filed approximately fifty-five individual suits with this Court.[1] As of November 17, 2010, a total of 135 persons had dismissed their individual claims, leaving 457 plaintiffs before the Court, spread over approximately fifty suits. The two suits now before the Court– Mays v. TVA, Case No. 3:09-CV-06 and Chesney v. TVA, Case No. 3:09-CV-09– are the only suits that seek certification of a class of plaintiffs. The Mays case has a single plaintiff, while the Chesney case includes ten individual plaintiffs. Other suits include more numerous groups of plaintiffs: Auchard

---

[1] TVA has supplied this total calculated as of November 17, 2010. See Doc. 280-4. The Plaintiffs have presented no evidence to the contrary, and the Court finds this calculation to be an accurate approximation of the total number of plaintiffs in these actions.

v. TVA,[2] Case No. 3:09-CV-00054 (299 individual plaintiffs); Scofield v. TVA, Case No. 3:09-CV-00064 (20 individual plaintiffs); and Raymond v. TVA, Case No. 3:09-CV-00048 (26 individual plaintiffs). In addition, approximately one hundred plaintiffs have filed suits in which there is either a single plaintiff or a few individual plaintiffs from the same family, e.g., Case Nos. 3:09-CV-491, 495, and 496.

## II. POSITIONS OF THE PARTIES

The Plaintiffs move the Court to certify a class of plaintiffs to try the claims presented in these cases.[3] The Plaintiffs maintain that a class action will be the most practical and efficient mechanism for managing the claims relating to the ash spill. In support of this position, the Plaintiffs note that: the harm alleged was inflicted by a single incident; these suits raise common questions of law and fact; and the classes of plaintiffs could be grouped rationally so as to dispose of common issues. The Plaintiffs argue that they satisfy all of the prerequisites for certification laid out in Rule 23 of the Federal Rules of Civil Procedure.

---

[2] Just before the Court was to take up the instant motions for class certification, the plaintiffs in Auchard filed their Motion to Establish Bellwethers for the September 2011 Trial [Doc. 195], which requests that the Court "enter an order establishing bellwether plaintiffs for the September 2011 trial in this and other 'earlier filed' TVA Ash Spill Cases, and limiting further plaintiff-specific discovery and expert witness disclosures to a corresponding pool of potential bellwether plaintiffs . . . ."

[3] Counsel from the two cases now before the Court maintain that their prayers for class certification are distinguishable from one another, because the cases, for example, make different claims, requests different damages, are brought by persons with differing property interests, and are more or less representative of the "typical" persons damaged by this disaster. To the extent the Court finds that the alleged differences between the Mays and Chesney requests for certification are pertinent to the class certification determination, the Court will note the same.

3

TVA, along with Defedants WorleyParsons Corporation ("WorleyParsons") and Geosyntec Consultants, Inc., ("Geosyntec"),[4] responds that the Plaintiffs do not satisfy the requirements of Rule 23. Specifically, TVA argues that the Plaintiffs' claims raise uniquely individual issues of causation, liability, and damages, in addition to raising unique defenses, and thus they do not fulfill the predominance requirement. TVA also argues that the Plaintiffs have not demonstrated the superiority of certification in this case. Further, TVA argues that the class proposal is unmanageable and issue certification would be impracticable and wasteful.

**III. APPLICABLE LAW**

In pertinent part, Rule 23 directs that a class may be certified for litigation of claims, where:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Further, a class action may be maintained only where:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

---

[4]TVA is the only common defendant in the two suits. Chesney also includes Defendants WorleyParsons and Geosyntec. All of the Defendants have responded in opposition to the class certification issue. Thus, while the Court has reviewed all of the parties' filings and this decision has universal application, the Court will refer to TVA rather than WorleyParsons and Geosyntec, in its analysis, except when noting an argument specifically made by WorleyParsons and Geosyntec.

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) [Omitted][5] or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1) and (b)(2).

"The party seeking the class certification bears the burden of proof." In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996); see also Senter v. Gen. Motors Corp., 532 F.2d 511, 522 (6th Cir. 1976). Before certifying a class, a district court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. In re Am. Med. Sys. Inc., 75 F.3d at 1078-79 (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)). "The district court retains broad discretion in determining whether an action should be certified as a class action, and its decision, based upon the

---

[5]The Plaintiffs have stated that they do not seek for a class to be maintained based upon the need for injunctive relief, pursuant to Fed. R. Civ. P. 23(b)(2). Thus, the Court has omitted this statutory provision.

5

particular facts of the case, [will] not be overturned absent a showing of abuse of discretion." Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th 1988).

**IV. ANALYSIS**

In the instant cases, the Court finds that the Plaintiffs have not satisfied the prerequisites to class certification. They have not demonstrated: impracticality of joinder, Fed. R. Civ. P. 23(a)(1); typicality of claims or defenses, Fed. R. Civ. P. 23(a)(3); or that the representative parties will adequately protect the interests of the class, Fed. R. Civ. P. 23(a)(4).

Further, the Plaintiffs have not satisfied Rule 23(b) because they have not demonstrated that the prosecution of separate actions would result in inconsistent standards for the defendants or be dispositive of the interests of non-parties, Fed. R. Civ. P. 23(b)(1). They have also failed to demonstrate that questions of law or fact common to class members predominate over any questions affecting only individual members, Fed. R. Civ. P. 23(b)(2). A class action is not superior to other available methods for fairly and efficiently adjudicating these cases. The claims asserted in these cases are characterized by individual, not common, issues. For just adjudication, these claims require individualized, fact-specific inquiries regarding the existence, nature and extent of each plaintiff's alleged damages, and the causation of that damage.

**A. Rule 23(a)**

Under Rule 23, the Plaintiffs must demonstrate each of the four prerequisites contained in Subsection (a). In this case, the Court finds that the Plaintiffs have not demonstrated: numerosity, typicality, or adequacy of representation.

6

*1.     Numerosity*

Under part (a)(1) of Rule 23, persons moving for class certification must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

"There is no strict numerical test for determining impracticability of joinder." In re Am. Med. Sys. Inc., 75 F.3d at 1079 (citing Senter, 532 F.2d at 522). "Apart from class size, other case-specific factors that courts should consider in determining whether joinder is impracticable include: the judicial economy, the geographical dispersion of class members, the ease of identifying putative class members, and the practicality with which individual putative class members could sue on their own." Cannon v. GunnAllen Fin., Inc., 2008 WL 4279858 (M.D. Tenn. Sept. 15, 2008) (citing Alba Conte & Herbert Newberg, 1 Newberg on Class Actions § 3:6 (4th ed. 2003)).

The Court finds that the persons who may have claims against TVA are easily identified. Potential claimants – and thus, putative class members – are aware of their rights. This is clearly evidenced by the number of persons who have filed individual claims. Coverage from local and national news media, the work of state and federal agencies, and a public relations campaign from TVA itself have made the ash spill's occurrence widely-known. Counsel for the Plaintiffs have represented that potential claimants are waiting to file suits, holding out for class certification. No evidence of such hold-outs has been presented to the Court. The Court finds that persons affected by the ash spill are aware of their potential claims, as shown by the number of filings, and their awareness argues against finding joinder impracticable.

In terms of geography, the Court finds that the claimants live or own property in an acute geographic area near the Kingston Plant and the Emory, Clinch, and Tennessee Rivers. While some property owners reside out of state, they own property in this area, from which their potential claim

would derive. This case does not involve, for example, a defective consumer good, marketed nationally, which would produce potential claimants all over the country.

The geographic disbursement of potential claimants in this case is similar to that previously presented to this Court in <u>Turnage v. Norfolk Southern Corporation</u>, Case No. 3:03-CV-341. The Court's decision not to certify a class in <u>Turnage</u>, following a railroad accident and spill, was affirmed by the Court of Appeals, which explained:

> Unlike some proposed classes that are spread throughout a city, state, or even the entire country, every potential plaintiff in this case lives within a three-mile radius. And unlike some harms that take place over long spans of time and require years to materialize, the harm in this case occurred at one brief point in time and was immediately obvious in its effects.

<u>Turnage v. Norfolk S. Corp.</u>, 307 Fed. App'x 918, 921 (6th Cir. 2009).

In regards to the practicality of potential claimants suing on their own, as noted, hundreds of persons *have* filed on their own. There are no barriers to filing potential claims. No evidence has been presented to the Court establishing that potential claimants lack access to attorneys or the Court. In fact, the number of individual lawsuits filed establishes just the opposite, and it counters any argument that pursuing an individual claim would not be worthwhile. In addition, the Court is located approximately thirty-five miles from the scene of the ash spill. All potential plaintiffs would be pursuing their claims in a relatively convenient forum.

The costs attendant to trying these cases have already been reduced by the Court's prior rulings. The District Judge has ruled that the claims against TVA will not be tried by a jury. The District Judge has also ruled that punitive damages will not be awarded against TVA, and that TVA's recovery operations cannot support damage claims, which further narrows the case and reduces the costs of pursuing a claim.

8

"While large numbers may, in many cases, indicate impracticability of joinder, numbers are not a perfect predictor. Rather than naming a specific number, Rule 23 places the size of the class in the context of actual impracticability of joinder." Turnage, 307 Fed. App'x at 921; see also Rasmuson v. United States, 91 Fed. Cl. 204 (Fed. Cl. 2010) (finding numerosity requirement not satisfied, where 150 parcels of land were potentially affected by a taking without compensation, because majority of claimants were in close geographic proximity and could be joined in the action); Benefield v. Int'l Paper Co., ___ F.R.D. ___, 2010 WL 4180757 (M.D. Ala. Oct. 20, 2010) (finding that 1,500 separate properties do not result in impracticality of joinder where plaintiffs, claiming personal injury and property damage, sued a paper manufacturing facility for trespass, private nuisance, public nuisance, and negligence based on alleged discharges of hazardous substances, and where companion cases, with hundreds of joined individual claims, were proceeding to trial); Hum v. Dericks, 162 F.R.D. 628 (D. Haw. 1995) (finding joinder of members of proposed class of 200 persons was not "impracticable," where most class members were residents of state and could be identified through medical records); United Steelworkers of Amer., Etc., Local 8024 Union v. Jarl Extrusions, 405 F. Supp. 302 (E.D. Tenn. 1975) (Neese, J.) (finding joinder was not impracticable where 85 employees where all residents of the jurisdiction). After considering all of the foregoing, the Court finds that the joinder of these claims would not be impracticable.

The Court finds that the Plaintiffs have failed to demonstrate that the proposed class members are "so numerous that joinder of all members [would be] impracticable." Fed. R. Civ. P. 23(a)(1).

2.   *Adequacy of Representation*

A court may not certify a class unless it finds that the representative parties "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Representative plaintiffs

9

also must demonstrate a commitment to vigorously prosecute the interests of the class. "The adequacy of representation requirement 'overlaps with the typicality requirement because a class representative has no incentive to pursue the claims of the other class members absent typical claims.'" Isabel v. Velsicol, No. 04-2297 DV, 2006 WL 1745053, at *7 (W.D. Tenn. June 20, 2006) (citing In re Am. Med. Sys., Inc., 75 F.3d at 1083). Whenever named plaintiffs have interests that are actually or potentially antagonistic to the interests and objectives of other class members, the concern is that the named plaintiffs cannot "vigorously prosecute" the interests and objectives of the class. Id.; see also 7A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Fed. Practice & Procedure § 1768 (3d ed. 2005).

In these cases, Defendants WorleyParsons and Geosyntec were originally sued only in Long v. TVA, Case No. 3:09-CV-114. [See Doc. 191 in Case No. 3:09-CV-114 contra Doc. 61 in Case No. 3:09-CV-09, Doc. 1 in Case No. 3:09-CV-14]. The Long plaintiffs asserted claims for personal injury, medical monitoring, and property damage. The First Amended Complaint proposed sixteen defined classes, with many subclasses, which covered geographic boundaries different from those which the Chesney and Mays Plaintiffs now seek to certify.

Only one original Long plaintiff, Mr. Simon, remains a class representative in Chesney. Counsel in Long moved to dismiss all other plaintiffs' claims without prejudice. [Doc. 196 in Case No. 3:09-CV-114]. Although Long originally filed a motion to sever those orphaned plaintiffs and claims, the motion was withdrawn. Accordingly, the status of the personal injury claims of the formerly named Long plaintiffs is uncertain. What is clear, though, is that when Long counsel moved to consolidate with Chesney (f/k/a Blanchard) and Giltnane, the Consolidated Class Action Complaint no longer included claims for personal injury. [See Doc. 185 in Case No. 3:09-CV-09].

The Consolidated Class Action Complaint includes a resident class proposed specifically for purposes of medical monitoring as well as two geographic boundary classes for property damage. With the exception of Mr. Simon, all of the resident class members offered testimony regarding their intent to seek medical monitoring for the proposed class. Chesney Dep. 91:9-12, Aug. 20, 2010; Cordell Dep. 147:5-7, Aug. 19, 2010; Maines Dep. 56:14-24, Aug 27, 2010; Simon Dep. 153:6-9, Aug 18, 2010; Worley Dep. 87:23-88:9, Aug 26, 2010. Mr. Worley's counsel even clarified on the record that the omission of Mr. Worley's name from the resident class seeking medical monitoring was a drafting error, and that Mr. Worley was indeed seeking such monitoring. Worley Dep. 88:10-22. Mr. Gaddis, who did not fit the resident definition as proposed in the Consolidated Class Action Complaint, and was not personally seeking medical monitoring, sought to represent his class for purposes of medical monitoring. Gaddis Dep. 62:10-18; 171:14-19, Sept. 8, 2010.

However, when Chesney Plaintiffs ultimately filed their Motion for Class Certification, it contained new class definitions and entirely abandoned medical monitoring relief on behalf of the class. The latest proposed complaint in Chesney [Doc. 305-1, proposed January 6, 2011] makes no mention of medical monitoring. Instead, it includes claims for property damage, diminution of the value of real estate, loss of enjoyment of real property, and loss of quality of life.

The Mays class definition,[6] based solely on property ownership, and the Mays complaint, seeking only damages for private nuisance, present similar concerns about claim-splitting or requiring plaintiffs to abandon the medical monitoring claims and personal injury claims altogether.

---

[6] "All individuals who own or owned real property located on the Emory or Clinch Rivers downstream from the TVA Kingston Fossil Plant in Roane County, Tennessee, during the period beginning on December 22, 2008 and ending on the date of trial who suffered available damages under Tennessee nuisance law." [Doc. 110 in 3:09-CV-06].

The Court finds that the result of the decision to abandon certification of medical monitoring claims, emotional distress claims, and personal injury claims, however, is that representative plaintiffs are no longer vigorously representing claims that exist in the putative class. There are putative class members with claims for personal injury, emotional distress, and medical monitoring who may be precluded from raising these claims in later litigation. See Isabel, 2006 WL 1745053, at *7.

As District Judge Donald of the Western District of Tennessee found in addressing a similar division of claims, where class representatives "do not share the interests or a presumptive subset of the larger class," and do not appear capable or ready to pursue the interests of the entire class, the proposed class does not fulfill the adequacy of representation prerequisite necessary for class certification. See id. at *7. Courts addressing similarly diverse claims and interests have reached the same conclusion. See Berger v. Compaq Computer Corp., 257 F.3d 475 (5th Cir. 2001) ("Class action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members."). See also, Benefield, 2010 WL 4180757 (denying class certification because, among other things, putative class members could jointly own property with individuals who had filed separate suits).

The Court finds the same to be true in these cases. The diversity of claims in these cases and the danger of plaintiffs being excluded from asserting their individual claims for personal injury, medical monitoring, or other claims undermine the adequacy of this representation. Thus, the Court finds that the Plaintiffs have not satisfied the adequacy of representation prerequisite necessary for class certification, Fed. R. Civ. P. 23(a)(4).

3.  *Typicality*

The varied relief sought by the proposed class representatives and the differing entities from whom they seek damages, as discussed above, also demonstrate a lack of typicality among the proposed classes.

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are not required to be identical to the claims of the putative class to meet this hurdle. Isabel, 2006 WL 1745053, at *6 (citing Gen. Tel. Co. v. Falcon, 457 U.S. at 155). "To satisfy the typicality requirement a sufficient relationship must exist between the injury to the named plaintiffs and the conduct affecting the class, such that 'the court may properly attribute a collective nature to the challenged conduct.'" Isabel, 2006 WL 1745053, at *6 (quoting In re Amer. Med. Sys. Inc., 75 F.3d at 1082))

These cases present claims for damages to property and related loss of enjoyment, despite the fact that even the class representatives have stated that they wish to also pursue medical monitoring claims. Moreover, some plaintiffs seek damages from TVA, exclusively, while others also seek damages from subcontractors who performed work at and/or evaluations of the Kingston Fossil Plant. Given the distinct claims and differing parties, litigation strategies, the type of evidence required, and the underlying theory of causation will be distinct. Isabel, 2006 WL 1745053, at *7. "This misalignment of interests between representative plaintiffs and the larger class is exactly what typicality is intended to prevent." Id. Thus, the Court concludes that the claimants named in both Mays and Chesney are not sufficiently typical, and the Court finds that the Plaintiffs have failed to satisfy the necessary prerequisite to class certification contained in Rule 23(a)(3).

In sum, and based upon all of the foregoing, the Court finds that the Plaintiffs' request for class certification fails under Rule 23(a).

**B.     Rule 23(b)**

Even assuming that the Plaintiffs' proposed classes satisfied the requirements of Rule 23(a), a class action must also satisfy the prerequisites of Rule 23(b)(1), (b)(2), and (b)(3). In this case, the Plaintiffs do not rely upon Subsection (b)(2), as there appears to be little dispute that these cases either did not seek injunctive or declaratory relief or such relief has already been dismissed. Instead, the Plaintiffs rely upon Subsections (b)(1), which requires that there be a risk of inconsistent judgments or judgments that will dispose of other claims, and (b)(3), which requires that class certification be the superior means for adjudication. For the reasons that follow, the Court finds that the Plaintiffs have failed to demonstrate either of these criteria.

*1.     Inconsistency of Standards or Disposition of Non-Party Interests*

"Certification under subsection (1) of Rule 23(b) is proper when the prosecution of separate actions would result in inconsistent standards for the defendants or be dispositive of the interests of non-parties." Isabel, 2006 WL 1745053, at *7.

The Court finds that there is little danger of inconsistent judgments in these cases because many overarching determinations, such as TVA's discretionary function defense, have already been adjudicated. The cases will be tried to the District Judge, not a jury. The Plaintiffs did not present any arguments or evidence concerning why class certification would be appropriate under Rule 23(b)(1). It is their burden to present such proof. Therefore, there being no reason to expect that separate actions would create inconsistent standards for the Defendants or would be dispositive of non-parties' interests, the Court finds that the proposed class action may not be maintained under Rule 23(b)(1).

*2. Superiority and Predominance*

In order to certify a class pursuant to subsection (3) of Rule 23(b), "the court [must find] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court finds that a class action is not the superior means for adjudication of the claims relating to the ash spill, nor do the issues presented predominate over any questions affecting only individual members. Instead, the Court finds that the individualized questions presented in these cases predominate over all others. There is no dispute that the ash spill took place. Rather, the parties dispute how much ash came onto any given parcel of land, how the use and enjoyment of a specific parcel was affected, the ownership of that parcel, and the value of the parcel and its use and enjoyment and the effects on persons. The evidence to be used in making these determinations will be, for example, individual accounts of land's usage, deeds, leases, title histories, maps, records of improvements, parcel specific test results, other documentation of potential ash intrusion, and medical records. These questions will predominate, and they will be unique for almost every claimant.

In this vein, the Advisory Notes to Rule 23 explain, "A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways." Advisory Comm. Notes, 1966 Amendments.

Courts examining mass accidents and contamination suits with facts similar to those now before the Court have concluded that unique factual inquiries will predominate. See, e.g., In re Katrina Canal Breaches Consol. Litig., 2009 WL 1707923 (E.D. La. June 16, 2009)(finding class

certification inappropriate because claims relating to property damages suffered in Hurricane Katrina "inherently require[d] individualized fact-specific inquiries"); John v. Nat'l Sec. Fire & Cas. Co., 2006 WL 3228409 (W.D. La. Nov. 3, 2006) (granting motion to dismiss class allegations where "factual inquiry would have to be made into each putative class member's claims, such as where and when materials and supplies were being purchased, what was the market price at that time, and when did the price of materials and supplies decrease."); Martin v. Shell Oil Co., 198 F.R.D. 580 (D. Conn. 2000) (denying class certification in groundwater contamination case because varying contamination test results at individual properties indicated that individual issues predominated); Thomas v. FAG Bearings Corp., Inc., 846 F. Supp. 1400, 1404-05 (W.D. Mo. 1994) (finding class certification was "not a superior or even desirable mechanism" in a groundwater contamination case because not all properties were equally affected).

The Court finds this case is similar to Benefield v. International Paper Company, ___ F.R.D. ___, 2010 WL 4180757 (M.D. Ala. Oct. 20, 2010), a case in which the district court found that class certification was not appropriate. In Benefield, the plaintiffs brought claims of, *inter alia*, trespass, nuisance, and negligence against International Paper as a result of its operation of a paper manufacturing facility. Id. at *1. As with the ash spill cases in this district, the Middle District of Alabama was faced with numerous suits proceeding on similar theories but seeking different damages. See id.

The court in Benefield found the proposed class – persons owning property within two miles of the facility – was insufficient because "a residential property owner within the class area [having] corrosion on his or her property [did] not necessarily mean that . . . he or she is a member of the class." Id. at *3. The court found that mass appraisals would not satisfy the burden of demonstrating

16

who was a member of the class. Id. at *4. Instead, the court found that additional fact-finding would be required to determine what property owners actually met the class definition. Id.

In both of the present cases, the Plaintiffs use property interests, either ownership or a leasehold, as the baseline characteristic of the putative class members. This characteristic does not automatically entail a legal claim against TVA. There may be no ash on a piece of property, a *de minimis* amount of ash on a property, or ash that was present before the ash spill. Further, the presence of ash does not, necessarily, impute liability. Moreover, outside factors may have caused any property value diminution, not the ash spill. A decrease in the value of certain property may be due, in whole or in part, to the general downturn of the real estate market in recent years.

If a claim is viable, its viability, and the damages owed to any given plaintiff, will be based upon individual factors. In short, each individual claimant should have a fair opportunity to present the Court with such evidence as might allow recovery of the total amount of that claimant's unique damages. The creation of classes would prevent this opportunity.

Plaintiffs argue that the Court will not be able to adjudicate the number of joined claims, asserting that the litigation will be interminable. The Court finds that these dire predictions are without basis. The District Judge has already demonstrated the ability to adjudicate significant preliminary issues and to put in place procedures to allow the efficient preparation of these cases.

Thus, for all the reasons stated above, the Court finds, first, that there is no danger of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." The Court, further, finds questions affecting only individual members and specific factual inquiries predominate over any common questions of law or fact, and a class action is not the superior method for fairly and efficiently adjudicating the controversy. Thus, neither Rule 23(b)(1) or (b)(3) is satisfied.

Accordingly, the Court finds that the Plaintiffs' request for class certification also fails under Rule 23(b).

**C.     Joinder of New Plaintiffs: Recommended Procedure**

In order to minimize unnecessary pleadings, motions, and expenditure of the Court's resources, The Court **RECOMMENDS** the following procedure for joining new plaintiffs following denial of the motions for class certification: counsel in <u>Mays</u> and <u>Chesney</u>, as well as in all other pending cases, shall have the right (but not the obligation),to add plaintiffs to the complaints in these actions by way of filing with the Court and serving on Defendants an Appendix of New Plaintiffs (the "Appendix").  The Appendix will list each new Plaintiff by name and address, specify the type of claim (e.g., personal injury, property damage), identify which causes of action pending in the operative complaint are asserted (e.g., negligence) and state whether Plaintiff is proceeding individually and/or as a representative, a guardian or next of friend of another (and the same information shall be provided for any such other person).  The claims of individuals named in any Appendix shall be deemed made for purposes of any applicable limitations period(s), whether governed by applicable statutes of limitations or repose, as of the date of the filing of the Appendix; the claims of such individuals shall not relate back to the date of any previously filed pleading or other document in the above-listed actions.  The foregoing provision shall not alter or eliminate any tolling of a statute of limitations or repose to which any such individual may be entitled as a result of being a putative class member.  Upon the filing of any Appendix, the individuals identified therein shall be subject to all orders, including case management orders, entered prior to their joinder in the lawsuit.  Finally, as stated in the Scheduling Order entered July 15, 2010, any Appendix or other amendment of the pleadings shall be filed at least one hundred and fifty days before trial.

## V. CONCLUSION

Based upon the foregoing, the Court **RECOMMENDS**[7] that the Motions for Class Certification **[Doc. 110 in Case No. 3:09-CV-06; Doc. 242 in Case No. 3:09-CV-09]** be **DENIED**, and at the same time, that the procedure for joining new plaintiffs proposed herein be approved.

Respectfully Submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[7]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).