LARRY MAYS,                              )
                                         )
          Plaintiff,                     )
                                         )
v.                                       )      No.:   3:09-CV-06
                                         )             (VARLAN/GUYTON)
TENNESSEE VALLEY AUTHORITY,              )
                                         )
          Defendant.                     )
_____    )
                                         )
GEORGE CHESNEY, *et al.*,                )
                                         )
          Plaintiffs,                    )
                                         )
v.                                       )      No.:   3:09-CV-09
                                         )             (VARLAN/GUYTON)
TENNESSEE VALLEY AUTHORITY,              )
                                         )
          Defendant.                     )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the Report and Recommendation (the "R&R")

[*Mays v. TVA*, Case No. 3:09-CV-06 ("*Mays*"), Doc. 123; *Chesney v. TVA*, Case No. 3:09-

CV-09 ("*Chesney*"), Doc. 307], issued by U.S. Magistrate Judge H. Bruce Guyton on January

19, 2011.  The R&R considers the *Mays* and *Chesney* motions for class certification [*Mays*,

Doc. 110; *Chesney*, Doc. 242], the responses of defendant Tennessee Valley Authority

("TVA"), the response of defendants WorleyParsons Corporation ("WorleyParsons") and

Geosyntec Consultants, Inc. ("Geosyntec") [*Mays*, Doc. 115; *Chesney*, Docs. 276, 280],[1] plaintiffs' reply briefs, the parties' respective supplemental briefs, and remarks during oral argument before the magistrate judge on December 14, 2010. In the R&R, Magistrate Judge Guyton recommended that plaintiffs' motions for class certification be denied. Plaintiffs in both cases filed timely objections to the R&R [*Mays*, Doc. 124; *Chesney*, Doc. 311]. TVA filed responses to both objections [*Mays*, Doc. 125; *Chesney*, Doc. 313, 315]. Defendants WorleyParsons and Geosyntec filed a response to the objections of the *Chesney* plaintiffs [*Chesney*, Doc. 314].

The matter is now before this Court on plaintiffs' objections to the R&R.

## I.    Background

The facts underlying the cases involved in this litigation are familiar to the parties and the Court and have been detailed in the R&R and in previous opinions entered in these cases. *See, e.g., Mays v. TVA*, 699 F. Supp. 2d 991 (E.D. Tenn. 2010) (giving a background of TVA's Kingston Fossil Plant (the "KIF plant"), the December 22, 2008 coal ash spill, and this litigation). *Mays* and *Chesney* are the only cases in this litigation seeking class certification.

*Mays* has a single plaintiff, an individual who owns and resides on property located downstream from the KIF plant. The *Mays* complaint asserts a single claim against TVA for a private nuisance—that the coal ash spill substantially interfered with his use and enjoyment

---

[1]Defendants WorleyParsons and Geosyntec were dismissed from *Chesney* on March 22, 2011 by order of the Court [*Chesney*, Doc. 318].

of his property [*Mays*, Doc. 124, p. 2]. *Mays* proposes a class definition based solely on property ownership on the day of the dike failure and ash spill.[2]

*Chesney* is a consolidated action of what was initially three separate cases, *Blanchard, et al. v. TVA*, Case No. 3:09-CV-09 ("*Blanchard*"), *Giltnane, et al. v. TVA*, Case No. 3:09-CV-14 ("*Giltnane*"), and *Long, et al. v. TVA, et al.*, Case No. 3:09-CV-114. Defendants WorleyParsons and Geosyntec, who have since been dismissed from *Chesney* by order of the Court [*See Chesney*, Doc. 318], were initially sued only in *Long* [*Long*, Doc. 191]. In the *Long* pre-consolidation complaint, the plaintiffs asserted claims for personal injury, medical monitoring, and property damage [*Id.*]. The *Long* plaintiffs also proposed sixteen defined classes with subclasses based on geographic boundaries [*Id.*]. On February 25, 2010, plaintiffs in *Blanchard*, *Giltnane*, and *Long* moved to consolidate their cases [*Chesney*, Doc. 133]. Several *Long* plaintiffs moved to sever their claims from the proposed consolidated action, but later withdrew the motion [*Long*, Docs. 197, 221, 228]. On July 8, 2010, the Court granted the motions to consolidate [*Chesney*, Doc. 183]. On July 13, 2010, plaintiffs filed the consolidated class action complaint (the "class action complaint") [*Chesney*, Doc. 185].

The *Chesney* class action complaint includes nine individual plaintiffs who assert claims against TVA for negligence, gross negligence, nuisance, trespass, strict liability,

---

[2]"All persons who own or owned real property abutting or adjoining either the Emory or Clinch Rivers or TVA's shoreline strip of property on those Rivers, downstream from the [KIF plant] on December 22, 2008." [*Mays*, Doc. 120, p. 4 n.8].

negligence per se, and injunctive relief [Doc. 185, ¶¶ 178-217].[3] The class action complaint does not contain claims for personal injury. All *Chesney* plaintiffs seek monetary damages and several *Chesney* plaintiffs seek the establishment of a medical monitoring fund or a supervised medical monitoring program [*Id.*, ¶ 2]. The *Chesney* plaintiffs also seek to represent three proposed classes: two property damage classes and a resident class [*Id.*, ¶ 162].

The *Chesney* plaintiffs' motion for class certification, filed on November 15, 2010, contains four new proposed class definitions based on property ownership and geographic location [*Chesney*, Doc. 243, pp. 12-13].[4] The *Chesney* plaintiffs also filed a proposed class action complaint (the "proposed class action complaint") conforming to their motion for class certification [*Chesney*, Doc. 305-1]. The proposed class action complaint contains the four new proposed class definitions and asserts claims for property damage, diminution of the value of real estate, loss of enjoyment of real property, and loss of quality of life [*Id.*; *see also* Docs. 242, 243]. The proposed class action complaint does not contain a claim for medical monitoring.

---

[3]The *Chesney* plaintiffs also assert claims for negligence, gross negligent, and nuisance against defendants WorleyParsons and Geosyntec [*Chesney*, Doc. 318].

[4]The *Chesney* plaintiffs propose four classes in the proposed class action complaint: the Emory Waterfront Class, the Inland Class, the Central Waterfront Class, and the Southern Waterfront Class. These classes are defined by reference to the Tennessee, Clinch, and Emory rivers, the Watts Bar Dam, and by geographically-based boundary lines proposed by plaintiffs [*See Chesney*, Doc. 243, pp. 12-13; Doc. 243-1, p. 2].

## A.    Requirements for Class Certification

The *Mays* and *Chesney* plaintiffs assert that their respective motions for class certification are distinguishable.  Both groups of plaintiffs, however, maintain that a class action is the most practical and efficient mechanism for managing claims related to the dike failure and coal ash spill.  Both groups of plaintiffs also maintain that they have satisfied the prerequisites for class certification laid out in Rule 23 of the Federal Rules of Civil Procedure.

The principal purpose of class actions is to achieve efficiency and economy of litigation with respect to the parties and the courts.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982).  The U.S. Supreme Court has observed that, as an exception to the usual rule that litigation is conducted by and on behalf of individual named parties, "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Falcon*, 457 U.S. at 155 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation omitted).  A court must, therefore, conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are indeed satisfied.  *Falcon*, 457 U.S. at 161.  This means that a class is not maintainable simply because the complaint repeats the legal requirements of Rule

23. *Am. Med. Sys., Inc.* ("*In re AMS*"), 75 F.3d 1069, 1079 (6th Cir. 1996). "'[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *In re AMS*, 75 F.3d at 1079 (quoting *Falcon*, 457 U.S. at 160). Moreover, the party seeking class certification bears the burden of establishing its right to class certification. *See Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976). Under Rule 23, a court has "substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639, 643 (6th Cir. 2006).[5]

The party seeking class certification must first meet all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—before a class can be certified. Fed. R. Civ. P. 23(a); *In re AMS*, 75 F.3d at 1079. "Once those conditions are satisfied, the party seeking certification must also demonstrate that it falls within at least *one* of the three subcategories of Rule 23(b). *In re AMS*, 75 F.3d at 1079 (emphasis in original). Plaintiffs in this case have stated that they do not seek class certification based upon the need for injunctive relief, pursuant to Rule 23(b)(2) [*Chesney*, Doc. 307, p. 5 n.5].

---

[5]In the *Mays* objections, plaintiff argues that the magistrate judge erred in his "strict construction" of the requirements of Rule 23(a) and that "it is generally accepted that Rule 23(a) should be liberally construed[.]" [*Mays*, Doc. 124, p. 4].

The Court does not agree, finding that the magistrate judge properly engaged in the "rigorous analysis" demanded by the relevant law. *See Reeb*, 435 F.3d at 644-45 (vacating a class certification for lack of a rigorous analysis).

**B.      The R&R**

The R&R recommends denial of plaintiffs' motions for class certification because plaintiffs have not demonstrated numerosity, typicality, or adequacy of representation [*Chesney*, Doc. 307, p. 13].  The R&R found that plaintiffs have not shown that these cases meet the criteria required by Rule 23(b)(1) because plaintiffs "have not demonstrated that prosecution of separate actions would result in inconsistent standards for the defendants or be dispositive of the interests of non-parties" and plaintiffs have not met the criteria required by Rule 23(b)(3) because "[t]hey have . . . failed to demonstrate that questions of law or fact common to class members predominate over any questions affecting only individual members." [*Id.*, p. 6].  According to the magistrate judge:

> A class action is not superior to other available methods for fairly and efficiently adjudicating these cases.  The claims asserted in these cases are characterized by individual, not common, issues.  For just adjudication, these claims require individualized, fact-specific inquiries regarding the existence, nature and extent of each plaintiff's alleged damages, and the causation of that damage.

[*Id.*].

Plaintiffs have objected to the magistrate judge's findings regarding the requirements of Rule 23(a).  Plaintiffs have also objected to the magistrate judge's finding that plaintiffs failed to meet the criteria required by Rule 23(b)(3).[6]

---

[6]Plaintiffs have not objected to the magistrate judge's finding that plaintiffs failed to meet the criteria required by Rule 23(b)(2).  The Court, therefore, does not address this portion of the R&R.

To the extent plaintiffs' objections to the R&R differ and to the extent the differences between the *Mays* and *Chesney* motions and arguments for class certification are pertinent to their objections and the Court's analysis, the Court will note the same. Otherwise, the Court addresses plaintiffs' objections together.[7]

## II.   Standard of Review

The Court must conduct a *de novo* review of those portions of the R&R to which a party objects unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

---

[7]TVA and defendants WorleyParsons and Geosyntec have requested that the Court reserve action on plaintiffs' objections until the Court rules on TVA's pending and potentially dispositive motions for summary judgment. Defendants assert that deferring consideration of the objections is appropriate given the late stage of this litigation, the comprehensive factual record, and because defendants' fully briefed motions could moot plaintiffs' requests for class certification.

After carefully considering defendants' requests, the Court respectfully declines to defer consideration of plaintiffs' objections to the R&R. Defendants are correct that potentially dispositive motions are pending in these cases. However, given this Court's rulings on two global dispositive motions [*Chesney*, Docs. 148, 319], the Court's order dismissing defendants WorleyParsons and Geosyntec [*Chesney*, Doc. 318], the extensive briefing of the class certification issue, and the implications class certification has in this litigation—both to these cases and to the other cases pending on the Court's docket regarding the ash spill—the Court concludes that a determination of the class certification issue is appropriate at this time.

8

## III.    Analysis

### A.    Rule 23(a)(1): Numerosity

The magistrate judge found that plaintiffs have not satisfied the numerosity requirement because judicial economy, the geographical dispersion of the class members, the ease of identifying putative class members, and the practicality with which each individual putative class member could bring suit on their own weigh against class certification. The magistrate judge also found that plaintiffs have failed to demonstrate that the proposed class members are "so numerous that joinder of all members [would be] impracticable." [*Chesney*, Doc. 307, p. 9 (quoting Fed. R. Civ. P. 23(a)(1))].

Plaintiffs object to these findings and argue that the proposed classes cannot realistically be handled through joinder. Plaintiffs assert that the proposed class definitions encompass class sizes, particularly in environmental mass tort cases, in which the majority of courts have found joinder to be impracticable.[8] Plaintiffs argue that the relative geographical proximity of potential claimants and the ease of identifying putative class members, factors found by the magistrate judge to weigh against certification, do not overcome the impracticability of joinder. Without class certification, plaintiffs argue,

_____

[8]In the *Mays* objections, plaintiff asserts that there is a presumption that the numerosity requirement of Rule 23(a)(1) is met when a proposed class contains more than 35 members [*Mays*, Doc. 124, p. 12 (citing *In re AMS*, 75 F.3d at 1076)].

The Court, however, finds no such presumption in *In re AMS* or within other Sixth Circuit law. *See In re AMS*, 75 F.3d at 1079 ("There is no strict numerical test for determining impracticability of joinder . . . . Rather, '[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.'") (citations omitted).

putative class members may not be able to file suit on their own due to financial or personal reasons. Plaintiffs also argue that the number of suits that have been filed under represents the actual number of property owners interested in pursuing claims against TVA, noting that plaintiffs' counsel has identified "over 450 claimants on file, another 300 that have taken the affirmative step of retaining the undersigned counsel, and countless others that have, in all likelihood, retained other counsel or have deferred taking such steps . . . to await the class certification order[.]" [*Chesney*, Doc. 311, p. 15]. In addition, plaintiffs argue that the magistrate judge erred in finding that plaintiffs had presented no proof of barriers to filing suit.

Plaintiffs also contend that the magistrate judge improperly relied on *Turnage v. Norfolk S. Corp.*, 307 F. App'x 918 (6th Cir. 2009), in finding that plaintiffs had not satisfied the numerosity requirement.[9] Plaintiffs assert that in *Turnage*, the geographic proximity of the proposed class was more pronounced and the class size was more speculative than in these cases due to the transient nature of the harm in *Turnage* and the aggressive informal compensation scheme pursued in that case. Plaintiffs assert that these cases are distinguishable from *Turnage* because of the number of plaintiffs who have already filed suit and the number who have indicated their intent to do so. Given the number of potential claimants, and given the size of the area and number of individuals potentially impacted by

---

[9]*Turnage* involved a train derailment and subsequent chemical spill which formed a cloud of toxins over portions of Blount and Knox County and resulted in mandatory and voluntary evacuation orders lasting about two days and covering a three-mile area surrounding the derailment site. *Turnage*, 307 F. App'x at 919.

the spill,[10] plaintiffs assert that it is not speculative to find that significant numbers of property owners wish to pursue claims against TVA [*Chesney*, Doc. 311, pp. 15-16].[11]

Plaintiffs' objections regarding numerosity will be overruled because the Court agrees that joinder in these cases is not impracticable. As noted by Judge Guyton, neither the potential number of claimants, nor the nature of their claims—environmental tort claims based on a single event—establish impracticability of joinder. As stated by the court in *Turnage*:

> While large numbers may, in many cases, indicate impracticability of joinder, numbers are not a perfect predictor. Rather than naming a specific number, Rule 23 places the size of the class in the context of actual impracticability of joinder. When considering whether joinder would be practicable in a given case, courts may consider "ease of identifying members and determining addresses, ease of service on members if joined, [and] geographical dispersion" among other things.

307 F. App'x at 921 (citation omitted). The joinder inquiry, like that required for the entire class certification inquiry, requires a fact-specific analysis that turns on the unique

---

[10]The *Chesney* plaintiffs assert that their experts "have determined that roughly 5,000 parcels are in the Classes." [*Chesney*, Doc. 311, p. 11].

[11]Plaintiffs also assert that TVA and defendants WorleyParsons and Geosyntec did not challenge the proposed class definitions and, in effect, conceded numerosity.

The Court disagrees. Both TVA and defendants WorleyParsons and Geosyntec challenged plaintiffs' class definitions by questioning plaintiffs' evidence regarding the relationship between the alleged coal ash contamination and the proposed class boundaries. Defendants also addressed, in their pleadings, whether this litigation presented an impracticability of joinder [*See Chesney*, Doc. 280, pp. 10-15, 44-52; Doc. 301, pp. 1-3]. Further, and even if this requirement of Rule 23(a) had not been challenged, Judge Guyton properly analyzed the numerosity requirement in undertaking the "rigorous analysis" required to determine whether a request for class certification meets the requirements of Rule 23.

circumstances of each case and not on a single factor, such as the number of potential claimants. Plaintiffs' citations to cases finding joinder impracticable, with little or no analysis beyond noting that the cases involve environmental torts or fewer potential claimants, does not overcome the magistrate judge's specific findings regarding the ease of identifying potential claimants, the close geographical proximity of the potential claimants, and the Court's continuing management of these cases.

Plaintiffs argue, as they did in their briefings before Judge Guyton, that there are a number of properties within the proposed class definitions where coal ash *may* be present and that these property owners *may* want to bring claims against TVA. However, beyond providing the Court with estimates of the number of potential claimants, plaintiffs have not shown what makes joinder *impracticable* given the large number of individual cases that have been filed and are proceeding to trial, the relatively small geographic area in which potential claimants reside or are located, the publicity surrounding the coal ash spill and this litigation, the close proximity of this Court to the location of potential claimants, the number of attorneys willing to take these cases, the Court's familiarity with this litigation, the Court's ability to resolve broad legal questions and pre-trial and discovery issues, and the procedures put in place for moving these cases forward and toward trial. *See, e.g., Benefield v. Int'l Paper Co.*, 270 F.R.D. 640 (M.D. Ala. 2010) (finding joinder not impracticable for a proposed class of 1,500 properties when companion cases, with hundreds of joined individual

claims, were proceeding to trial).[12]  In addition, plaintiffs' averments that putative class members *may* be unwilling to come forward due to fear of TVA's power in the community or *may* be unable to bring suit due to financial reasons [*See Chesney*, Doc. 311, p. 23; Doc. 302, pp. 7-8] is not specific evidence showing or indicating that there are indeed barriers to filing suit that would weigh towards a finding of class certification.

Plaintiffs have also misstated Judge Guyton's comparison of *Turnage* to these cases and have erroneously focused on the finding in *Turnage* that the proposed class definition was speculative.  Upon the Court's review of the R&R, the Court finds that the R&R does not conclude that the number of potential class members in these cases is speculative. Rather, the R&R concludes that plaintiffs' *proof* is speculative in regard to their argument that potential claimants, beyond the hundreds who have already filed suit, would be precluded from doing so if class certification is denied.  The Court also finds this argument regarding plaintiffs being precluded from filing suit to be somewhat incongruous with plaintiffs' argument that individuals who wish to file claims not brought in the proposed class actions may opt out or pursue individual lawsuits.  The Court also finds the magistrate

---

[12]The *Chesney* plaintiffs also argue that these cases are distinguishable from *Benefield* because in that case, the parties agreed to isolate certain claims which allowed the district court to manage the cases despite the large number of plaintiffs.  Plaintiffs assert that plaintiffs in these cases have been unable to pursue a similar path, as evidenced by the magistrate judge's order denying a bellwether trial proposal [*Chesney*, Doc. 311, p. 11 n.6 (citing *Benefield*, 270 F.R.D. 640); *see Auchard, et al. v. TVA*, 3:09-CV-54 ("*Auchard*"), Doc. 245].

The Court, however, does not agree that this is an indication that joinder is impracticable and notes that the Court and the parties, throughout this litigation, have both exhibited the ability to move these cases forward and toward trial, consolidate various pre-trial issues and discovery matters, and issue global orders.

judge's limited comparison of *Turnage* to these cases to be appropriate. The geographic disbursement of the claimants in *Turnage* is similar to that presented in these cases, and the event that gave rise to the plaintiffs' claims in *Turnage* is comparable to the dike failure and ash spill in that each was a discrete event with an alleged discernible impact on a finite geographic area. In addition, in these cases, as in *Turnage*, each event was followed by remedial measures, including purchases of affected property and clean up efforts.

In sum, while plaintiffs argue that they have presented competent evidence that a large number of individuals throughout the proposed classes have been affected by the ash spill due to the presence of ash on their property, plaintiffs have not demonstrated to the Court that joinder of these potential claimants is impracticable, or that potential claimants could not bring suit on their own. Thus, the Court finds that the existence of these potential claimants, even in the numbers cited by plaintiffs, does not make joinder impracticable, and plaintiffs' objections to numerosity are hereby overruled.

### B. Rule 23(a)(4): Adequacy of Representation

The magistrate judge also found that plaintiffs had not satisfied the adequacy requirement because the named class representatives have demonstrated a willingness to abandon claims on behalf of themselves and unnamed class members by deciding not to pursue claims for medical monitoring, emotional distress, and personal injury [*Chesney*, Doc. 307, pp. 10-12]. Judge Guyton found this to raise claim splitting concerns and adequacy concerns for both the *Mays* and the *Chesney* class definitions given the diversity of claims—the claims previously alleged by other plaintiffs in these cases, the claims initially

alleged by the named class representatives, and the claims that may yet be asserted by individuals wishing to file suit [*Id.*, pp. 11-12].[13] The magistrate judge found that abandoning such claims may preclude unnamed and putative class members from bringing claims other than those raised in the proposed class action complaint [*Id.*]. *See Isabel v. Velsicol Chem. Corp.*, No. 04-2297 DV, 2006 WL 1745053, at *7 (W.D. Tenn. June 20, 2006) (finding that where class representatives "do not share the interests of a presumptive subset of the larger class," and do not appear capable or ready to pursue those interests, the proposed class does not fulfill the adequacy requirement).

Plaintiffs argue that Judge Guyton's concern about claim splitting is unsupported by the law and ignores the "prevailing approach" in regard to whether plaintiffs are obligated to pursue all possible claims in a class action. Citing cases from Pennsylvania, Ohio, Illinois, and Oklahoma, plaintiffs argue that the magistrate judge's reliance on *Isabel*, cited by the magistrate judge in support for his concerns over claim splitting, failed to take into account the requirements of Rule 23(a), relevant precedent, and the factual and procedural distinctions between *Isabel* and these cases. Plaintiffs assert that there would be no *res judicata* effect on claims not certified, and plaintiffs in both *Mays* and *Chesney* argue that

---

[13]In regard to the proposed claims and class definitions in *Chesney*, Judge Guyton expressed concern about claim splitting because there is no mention in the *Chesney* proposed class action complaint of claims for medical monitoring or personal injury, despite several plaintiffs, including named class representatives, having initially asserted such claims [*Chesney*, Doc. 307, pp. 10-11]. In regard to *Mays*, Judge Guyton found plaintiff's sole claim for private nuisance and his class definition based on ownership to pose similar concerns [*Id.*, pp. 11-12]. Judge Guyton noted that the *Mays* class definition and proposed claim does not address claims individual plaintiffs and putative class members have previously asserted in the cases comprising this litigation [*Id.*].

they have made a calculated and reasoned decision to only pursue claims that are appropriate for a class action, likely to succeed, and do not require the individualized presentation of evidence that might defeat the superiority of the class action mechanism.

As an initial matter, the Court notes the disagreement concerning the effect of *res judicata* on plaintiffs' decisions not to bring personal injury, emotional distress, or medical monitoring claims in the proposed class actions. The positions of TVA and of defendants WorleyParsons and Geosyntec is that the proposed class actions may jeopardize class members' rights to bring such claims in subsequent suits [*Chesney*, Doc. 313, p. 12 n.6]. *See Isabel*, 2006 WL 1745053, at *7; *Cochran v. Oxy Vinyls LP*, No. 3:06-CV-364-H, 2008 WL 4146383, at *10 (W.D. Ky. Sept. 2, 2008) (noting that Kentucky law would bar absent class members from later asserting personal injury claims after the proposed class actions representatives abandoned such claims in their request for a class action). Plaintiffs' position, on the other hand, is that there would be no such effect. *See Gates v. Rohm & Hass, Co.*, 265 F.R.D. 208, 218 n.15 (E.D. Pa. 2010) (finding the risk of claim-splitting not fatal to class certification); *see id.* at n.15.

After considering these positions, the Court finds that it cannot conclusively determine the *res judicata* effect of a decision yet to be handed down by this Court. Such a decision is for the forum presented the issue if and when it arises. The Court believes that it can, however, assess the risks of such a determination and weigh it in the Court's consideration of class certification. Accordingly, given the potential effect of *res judicata*, the application of which may preclude subsequent litigation under certain conditions, along with the

application of the single-injury rule, which Tennessee courts appear to follow, *see Grimsley v. Kitrrell*, No. M2005-02452-COA-R3-CV, 2006 WL 2846298, at *2 (Tenn. Ct. App. Sept. 29, 2006) (discussing the application of the "single injury rule" and the effect of *res judicata* where a plaintiff attempted to split property and personal injury claims), the Court finds that whether putative class members could bring these claims in a subsequent suit is, at best, undeterminable. *See Chambers v. Colonial Pipeline Co.*, 296 F. Supp. 555, 558 (E.D. Tenn. 1968) (discussing, in an eminent domain case, *res judicata* in the context of claim splitting and failure to assert claims which were asserted or should have been asserted in a prior action).

*Isabel*, which involved environmental tort claims for which the plaintiffs sought class certification, raised adequacy concerns for the district court due in part to the class representatives' abandonment of personal injury and emotional distress claims. *Isabel*, 2006 WL 1745053, at *7. The Court agrees with Judge Guyton that such concerns are present in these cases as well because individual plaintiffs, putative class members, and proposed class representatives have previously asserted personal injury, medical monitoring, and emotional distress claims, and the Court has no evidence that these claimants have willingly abandoned such claims. While several cases cited by plaintiffs find the practical risks of claim splitting to be minimal, the facts of those cases are distinguishable from these cases. Unlike these cases, the cases cited by plaintiffs do not indicate that a significant number of putative class members (including several named class representatives) had previously filed cases asserting claims now abandoned in the proposed class action complaints and engaged in discovery and

pretrial briefing regarding those claims.  In addition, in *Gates*, cited by plaintiffs, the district court noted that "it appears that the vast majority of absent class members do *not* have present physical injuries and that individuals who wished to pursue claims not certified for class action could always exercise their right to sue individually or opt out of the class."  265 F.R.D. at 218.  The Court cannot make this same determination regarding the personal injury, emotional distress, or medical monitoring claims of potential claimants in these cases.  In addition, while the individual suit and opt out options noted in *Gates* are equally applicable to these cases, the pursuit of these options detracts from plaintiffs' argument that a class action is the superior mechanism for handling claims relating to the ash spill.

In addition, the Court notes that plaintiffs have not disputed Judge Guyton's description of their proposed claims and what each encompasses, nor do plaintiffs dispute the magistrate judge's description of the evolution of the proposed class action claims in *Chesney*, or the magistrate judge's observations that other plaintiffs have brought claims and sought damages for claims apart from those proposed in the *Mays* and the *Chesney* plaintiffs' motions for class certification [*See, e.g., Auchard, et al. v. TVA*, 3:09-CV-54 ("*Auchard*"), Doc. 203-6, pp. 1-4 (listing the *Auchard* plaintiffs' computations for pain and suffering damages, emotional distress damages, and loss of spousal consortium damages)].  Plaintiffs argue that they are not obligated to pursue all possible claims and that they have made strategic decisions to pursue only the claims likely to succeed.  While this may be true, such strategic decisions do not obviate the magistrate judge's finding that claims once asserted by a number of individual plaintiffs have now been abandoned in the motions for class

certification. Further, the Court has no indication that such claims have been willingly abandoned. Given the requirement of Rule 23(a)(4) that the representative parties "fairly and adequately represent the interests of the class[,]" Fed. R. Civ. P. 23(a)(4), and given individual plaintiffs' prior assertions of these claims, the Court is not satisfied that the proposed representatives in *Mays* or *Chesney* adequately represent the interests of putative class members.

Last, the Court questions whether the named class representatives will vigorously prosecute the interests of the proposed classes. In TVA's response to plaintiffs' objections, TVA points out that several proposed *Chesney* class representatives and the proposed class representative in *Mays* have not spoken with other class representatives or their neighbors regarding the class action proposals, and have not been involved in the investigation of other properties within their respective classes [*Chesney*, Doc. 313, pp. 13-14 (citing depositions of proposed class representatives); *Mays*, Doc. 125, pp. 11-12 (citing the deposition of plaintiff in *Mays*)]. Such languid pursuit of the proposed class actions does little to convince the Court of the vigorous representation of the interests of the proposed classes by the named class representatives.

On balance, and after weighing all of the above considerations, the Court agrees with Judge Guyton's determination that plaintiffs have not satisfied the adequacy requirement. Plaintiffs' objections to adequacy are therefore overruled.

### C.    Rule 23(a)(2) & (a)(3): Commonality and Typicality

Magistrate Judge Guyton addressed the commonality and typicality requirements together because "the 'commonality and typicality requirements of Rule 23(a) tend to merge.'"  *Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004) (quoting *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998)).  The magistrate judge found that the claimants and claims in *Mays* and *Chesney* are not sufficiently typical because the claims pursued by individual plaintiffs and putative class members and the claims of the named class representatives are insufficiently aligned [*Chesney*, Doc. 307, p. 13].  The magistrate judge also found insufficient alignment between the claims of the named class representatives and the claims these same plaintiffs initially pursued [*Id.*].

Plaintiffs object, arguing that their claims are typical of the classes and that the magistrate judge disregarded *Sterling v. Velsicol Chemical Corp.*, in which the Sixth Circuit noted that typicality is satisfied "where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, [and] a class action may be the best suited vehicle to resolve such

a controversy." 855 F.2d 1188, 1197 (6th Cir. 1988).[14] Plaintiffs argue that this is the situation here because all class members' claims arise out of the dike failure and ash spill, the interests of the class representatives and the putative class members are aligned, and all class members share the same experience. Plaintiffs argue that it is of no moment that they have elected not to pursue certain claims as a class because their pursuit of property damage and nuisance claims "align[s] perfectly with the property damage and nuisance claims" of putative class members [*Chesney*, Doc. 311, p. 22]. Plaintiffs also assert that to the extent individual class members wish to pursue other claims such as personal injury or medical monitoring claims, those individuals are free to opt out of the class action or sue individually. Plaintiffs argue that such actions would not detract from the principal harm caused by TVA and the claims for which plaintiffs have requested certification.

In light of what has occurred in these cases since the R&R was issued and the objections filed—specifically, the dismissal of defendants WorleyParsons and Geosyntec—the Court notes that the magistrate judge's finding that plaintiffs have not

---

[14]In the *Mays* objections, plaintiff argues that the magistrate judge disregarded the "presumption" in *Sterling* that a class should be certified when claims arise from the same event or practice or course of conduct that gave rise to the claims of the other class members [*Mays*, Doc. 124, p. 14].

The Court, however, does not read *Sterling* to state such a presumption—the Sixth Circuit's statement in *Sterling* is that "a class action *may* be the best suited vehicle[,]" not that there *is* a presumption of class certification in such a situation. *Sterling*, 855 F.2d at 1197 (emphasis added). *Sterling* supports what the Court has previously noted, that a class action determination is to be made after a rigorous analysis and a careful inquiry into the specific facts of a particular case. *Id.* ("The district court retains broad discretion . . . and its decision, based upon the particular facts of the case of the case, should not be overturned absent a showing of abuse of discretion.").

satisfied the typicality requirement was not premised solely on the existence of multiple defendants. Rather, the magistrate judge also relied upon the various types of claims and the distinct types of evidence and theories of causation required for proving plaintiffs' claims [*Chesney*, Doc. 307, p. 13].

Thus, the Court has taken the dismissal of defendants WorleyParsons and Geosyntec into consideration and concludes, even with the dismissal of these defendants, that the magistrate judge appropriately determined that plaintiffs' claims are not sufficiently typical. Plaintiffs' interests are insufficiently aligned because the proposed class representatives assert claims different from the claims pursued by individual plaintiffs and potential claims members [*see Chesney*, Doc. 280, pp. 38-40].[15] More importantly, plaintiffs' claims are not typical because the analysis and ultimate determination of each plaintiff's claim will turn primarily on individualized inquiries into how the coal ash affected each plaintiff's specific

_____

[15]In TVA's reply brief to the *Chesney* plaintiffs' motion for class certification, TVA noted the variety of claims asserted in this litigation:

> For instance, some putative members of the proposed Inland Class want to pursue claims for personal injury (*e.g.*, *Auchard* plaintiff Alexic Bryson), medical monitoring (*e.g.*, *Auchard* plaintiff Richard Snow), emotional distress (*e.g.*, *Smith* plaintiff Julia Kyker, and/or inverse condemnation (*e.g.*, *Scofield* plaintiffs Craig and Holly Hurley). . . . The same desire holds true for putative class members living in the other three proposed class areas. Indeed, even named Plaintiffs Chesney, Maines, Cordell, and Simon filed their lawsuit as a proposed medical monitoring class action, and confirmed their desire for medical monitoring at their recent depositions. Plaintiff Burnum similarly testified at deposition that she wanted medical monitoring for her family.

[*Chesney* Doc. 280, pp. 39-40].

property interest. Given the unique location of each plaintiff's individual property, and the unique situation of each plaintiff and his or her use and enjoyment of the property, individualized inquiries will apply to both the property damage and the nuisance claims. There is no "typical" proof for how coal ash came to be on each unique piece of property, no "typical" proof for whether the coal ash affected or damaged each property, and no "typical" proof for how each individual property owner used or enjoyed his or her property. As noted in *In re AMS*, when a common cause of injury cannot be taken as a given, "the factual and legal issues *do* differ dramatically from individual to individual." 75 F.3d at 1084 (reversing a Rule 23(b)(3) class certification in actions involving claims of liability for defective medical device products, since "no single proximate cause applies equally to each potential class member"). In these cases, while there may be common causes of the dike failure, the questions of specific, proximate causation and damages are individual inquiries, and the Court agrees with the magistrate judge that such inquiries will predominate.

While plaintiffs point to the individual suit or opt-out mechanisms to cure any issue that may arise when individuals wish to pursue claims or "marginal theories" not brought as a class, the Court finds that these mechanisms would not solve the problems identified by Judge Guyton and noted above in regard to the individualized forms of causation and proof required for plaintiffs' claims for which they are seeking class certification. Moreover, the Court does not find a situation in which individual claimants pursuing separate suits, either in addition to claims brought in the proposed class action or in suits pursued by plaintiffs

with no part in the class action, weigh in favor of plaintiffs' argument that a class action is the superior mechanism for purposes of judicial economy and efficiency.

Accordingly, plaintiffs' objections to commonality and typicality are hereby overruled.

### D.    Rule 23(b)(3): Predominance and Superiority

Judge Guyton also found that individualized questions in these cases predominate over common issues. The magistrate judge noted that even the threshold questions of class membership for the *Mays* and *Chesney* proposed class definitions will require the Court's consideration of individualized factors and demand an individualized inquiry into specific property interests [*Chesney*, Doc. 307, p. 15]. Judge Guyton noted that the viability of each plaintiff's claim—including whether there was coal ash present on a specific property, the amount of coal ash on the property, the source of the coal ash and what caused it to be on the property, the extent to which the ash may or may not have caused the property to decrease in value, and the amount of damages owed to each individual plaintiff—will require individualized inquiries which will predominate over questions of law or fact common to all class members [*Id.*, pp. 15-17]. The magistrate judge also found that a class action was not the superior mechanism to resolve the claims relating to the ash spill because this Court has demonstrated the ability to adjudicate significant preliminary issues, resolved complicated issues through the entry of global orders, and implemented procedures for efficient case preparation.

Plaintiffs object, arguing that liability determinations and defendants' course of conduct leading up to the dike failure and ash spill are common issues which predominate over the individualized questions noted by the magistrate judge. Plaintiffs assert that their claims involve a common causation inquiry and seek common forms of harm which will require common forms of proof. Plaintiffs argue that the magistrate judge's determination misapprehends the Rule 23(b)(3) inquiry because it requires that all plaintiffs suffer identical harm even when individualized damages could be adequately determined by a mass damage appraisal or in later individualized proceedings without affecting the common, class-wide liability determinations made through a class action mechanism. Plaintiffs urge the Court to consider the statements pertaining to class certification in *Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004), and in *Sterling*, and to find that *Benefield*, cited favorably by the magistrate judge, is distinguishable. Last, plaintiffs argue that the magistrate judge made impermissible merits determinations throughout the R&R, such as when he stated that property ownership alone does not entail a legal claim against TVA because the presence of coal ash is not determinative of class members' right to recover.

The Court agrees with the magistrate judge that individualized questions will predominate over the common issues in this litigation. Many of the common issues identified by plaintiffs—issues dealing with proof of past conduct by TVA and others and issues regarding design, construction, and operations at the KIF plant—have been previously determined and narrowed in the Court's orders on the application of the discretionary function doctrine [*Chesney*, Doc. 148] and the nondiscretionary conduct issue [*Chesney*, Doc.

319].  These orders also dealt with issues of causation common to all plaintiffs.  Indeed, while several common issues have yet to be determined, including those addressed in TVA's pending motion for summary judgment and whether specific nondiscretionary conduct by TVA caused the dike failure, individualized inquiries remain.  Moreover, the Court agrees with Judge Guyton that these individualized inquiries, such as whether coal ash is or was present on specific property, the proximate causation inquiry as to whether nondiscretionary conduct for which TVA can be sued caused coal ash to be present on a specific property, how each plaintiff's property interest and use and enjoyment of property has been impacted by the coal ash, and the extent of each plaintiff's damages, will predominate.[16]

Plaintiffs argue that *Benefield* is distinguishable because plaintiffs have focused exclusively on the diminution in value of the affected properties and because their claims arise from common forms of harm, while plaintiffs in *Benefield* sought other categories of damages not contemplated by the plaintiffs' proposed mass appraisal analysis.  Plaintiffs also argue that the proposed classes in *Benefield* required the district court to make improper individualized merits determinations as to whether a particular individual met the class definition.

Plaintiffs have misconstrued the magistrate judge's comparison of *Benefield* to these cases.  Judge Guyton did not focus on *Benefield*'s discussion of the categories of damages

---

[16]As TVA points out in its response to the *Chesney* plaintiffs' objections, these common issues of causation may be narrowed or resolved prior to any trial, may be resolved in a consolidated trial, or may be resolved in the first case set for trial [*Chesney*, Doc. 313, pp. 18-19].  The Court agrees, and finds that similar procedures of the type identified by TVA will properly address plaintiffs' concern about unjust or inefficient repetition.

sought by the plaintiffs or the initial, individualized merits determinations the district court found necessary to determine whether an individual claimant would fall within a proposed class (although, as previously noted, the magistrate judge found this too was a problem with plaintiffs' proposed class definitions). Rather, in comparing these cases to *Benefield*, Judge Guyton noted the district court's observation that by presenting evidence that property in the contaminated area has been damaged and can be damaged, such "does not purport to establish on a class-wide basis that all residential property owners in the class area suffered injury to property." 270 F.R.D. at 651. The district court noted that the plaintiffs had provided evidence that contaminated substances released by the defendant could cause property damage and did in fact cause property damages to some class members. *Id.* The district court noted, however, that even in light of this evidence, "individualized determinations will have to be made of whether each class member has suffered injury and whether that injury was proximately caused by the Defendant's actions." *Id.* Given the Court's previous rulings and the nature of plaintiffs' claims, the Court agrees with Judge Guyton that such individualized inquiries—how the coal ash got onto a specific property, the extent to which a specific property has been damaged, and the effect of the coal ash on the value of the property and the plaintiff's use and enjoyment of said property—are the predominate issues yet to be determined.

The Court also disagrees with plaintiffs' contention that Judge Guyton ignored Sixth Circuit precedent in *Olden* and *Sterling* in regard to environmental cases seeking class action when the claims at issue arise from a single event or course of conduct [*See, e.g., Chesney*,

Doc. 307, pp. 35-36].  Closer scrutiny of the cases cited by plaintiffs indicates that these cases do not dictate a particular outcome and that the language of the cases is permissive rather than mandatory.  *Olden* suggests that certification is within the discretion of the district court when the existence of common questions "would likely allow the court to determine liability (including causation) for the class as a whole."  383 F.3d at 508.  As noted above, Judge Guyton determined that while common issues of causation do exist in these cases, these common issues do not predominate over the individual issues of causation.  The Sixth Circuit pointed out in *Sterling* that when "no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy."  855 F.2d at 1197.  Here, common issues of causation, such as what nondiscretionary conduct by TVA, if any, caused the dike failure and ash spill, do not predominate over the individualized issues of whether coal ash is or was present on each specific property, whether the presence of the coal ash on the specific property can be traced to TVA's nondiscretionary conduct, whether the coal ash has damaged each specific property, whether and how the coal ash affects the property owner's use and enjoyment of said property, and the amount of damages, if any, to each property and to each plaintiff.

The Court is aware that "if liability is found, the issue of damages can be decided by a special master or by another method."  *Olden*, 383 F.3d at 509.  The Court, however, is of the opinion that an individualized determination of damages is not the only individualized inquiry that will be required.  Plaintiffs' proposed solutions of a mass damages appraisal or

individualized damages proceedings would not resolve the individualized issues dealing with specific proximate causation and whether each individual plaintiff and his or her specific property and interest in property was harmed by TVA's nondiscretionary conduct.

Plaintiffs have also argued that the magistrate judge made improper evaluations and determinations on the merits of plaintiffs' existing and potential claims. The Court disagrees. The magistrate judge's analysis of class certification required a rigorous analysis of the requirements of Rule 23, and as both the Supreme Court and the Sixth Circuit have observed, such an analysis may make it necessary for a court to probe behind the pleadings. *See Sher v. Raytheon Co.*, No. 09-15798, 2011 WL 814379, at *2 (11th Cir. Mar. 9. 2011) ("Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.") (citation omitted) (vacating and remanding the district court's order certifying a class in a case alleging environmental contamination); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("[C]lass determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"); *id.* at n.12 ("'The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.'") (citations omitted). In light of the foregoing, the Court finds that Judge Guyton properly considered the nature of plaintiffs' existing claims and the nature of what individual plaintiffs and putative class members have claimed in this litigation, in addition to the relevant factual and legal issues and the evidence and theories necessary to

establish those claims.  The magistrate judge did not judge plaintiffs' claims on their merits, but properly noted the common and individual issues that may arise by virtue of the types of claims asserted, and how such claims relate to inquiries of causation, proof, and damages. The Court does not find the magistrate judge's careful consideration of these issues to be erroneous or improper.

The Court also agrees with the magistrate judge that a class action is not the superior mechanism for handling the claims arising out of the coal ash spill.  There is no danger of related cases being filed in other venues because all cases involving the ash spill will be filed in this Court due to venue requirements and TVA's status as a federal agency.  In addition, in the more than two years since these actions were filed, this Court has established efficient procedures for handling the complicated issues presented, including entering global orders on scheduling, discovery, and potentially dispositive legal issues, and these procedures have succeeded in efficiently moving these cases forward.  *See Cochran*, 2008 WL 4146383, at *11 ("Rule 23(b)(3) classes . . . must satisfy a two-part test of commonality and superiority, and should only be certified if doing so would 'achieve economies of time, effort, and expense.'") (quoting *Sterling*, 855 F.2d 1196).  The Court also has no evidence of a shortage of attorneys willing to take these cases and no concrete evidence of barriers potential claimants have to filing suits.  Finally, and even if the Court adopted plaintiffs' class action proposals *in toto*, the Court may still be faced with a number of individual lawsuits and must then devise procedures for the efficient adjudication of the claims of those individuals who chose to opt out of the class action.

In sum, plaintiffs' objections to predominance and superiority are hereby overruled.

## IV.     Conclusion

For the reasons stated above, plaintiffs' objections to the R&R [*Mays*, Doc. 124; *Chesney*, Doc. 311] are hereby **OVERRULED**, Magistrate Judge Guyton's R&R [*Mays*, Doc. 123; *Chesney* Doc. 307] is **ACCEPTED IN WHOLE**, and plaintiffs' motions for class certification [*Mays*, Doc. 110; *Chesney*, Doc. 242] are **DENIED**.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE